**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WELLS FARGO BANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY IN ITS CAPACITY AS TRUSTEE FOR THE BENEFIT OF HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2018-PHH, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-PHH, acting by and through Situs Holdings, LLC, as special servicer under the Trust and Servicing Agreement, dated August 7, 2018,<br><br>                    Plaintiff,<br><br>        v.<br><br>JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, an Ohio national bank association,<br><br>                    Defendant. | CIVIL ACTION NO.  1:24-cv5665 |

**COMPLAINT FOR DECLARATORY JUDGMENT**
**AND BREACH OF CONTRACT**

Plaintiff Wells Fargo Bank, N.A., not in its individual capacity, but solely in its capacity as Trustee (the "Trustee") for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH ("Trust"), acting by and through Situs Holdings, LLC, as special servicer under the Trust and Servicing Agreement, with an effective date of August 7, 2018, states its complaint as follows:

### INTRODUCTION

**The Loan Agreement, the Collateral and the Assignment to Trustee**

1.      Trustee's claims arise out of an approximately $333 million loan (the "Loan") made by defendant JPMorgan Chase Bank, National Association ("JPMCB") to non-party Thor Palmer

Hotel & Shops LLC (the "Borrower").[1]  The Loan's terms are set forth in a June 8, 2018, Loan Agreement (the "Loan Agreement") and related documents (the "Loan Documents"), which contain representations made by Borrower to JPMCB.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit 1.

2.      The collateral securing Borrower's obligations under the Loan consists primarily of the Hilton Palmer House Hotel in Chicago (Cook County), Illinois (the "Hotel"), including Borrower's rights of record in perpetuity to access space (meeting rooms, utility areas, employee cafeteria and restrooms) in an adjacent parcel.  The spaces in and access to the adjacent parcel are necessary for the Hotel's operation.

3.      The Loan was later sold by way of an August 7, 2018, Mortgage Loan Purchase Agreement (the "MLPA"), in which JPMCB made numerous representations to the Loan purchaser regarding the Borrower's representations in the Loan Agreement and the absence of any known events of default existing thereunder.  The purchaser assigned and deposited the Loan and related agreements, including the Loan Agreement, into the Trust, pursuant to the Trust and Servicing Agreement ("TSA"), dated August 7, 2018, to be administered and serviced by Trustee and its agents for the benefit of the Trust's beneficial interest holders.  The MLPA and TSA are attached hereto as Exhibits 2 and 3.

**Borrower Defaults, and Trustee Acts to Enforce the Loan Agreement.**

4.      In April 2020, Borrower defaulted on its obligations under the Loan Agreement by failing to pay debt service when due, and further defaulted in June 2020 by failing to pay the Loan at maturity.  Trustee then acted to enforce the Loan Agreement and secure its rights in the Hotel

---

[1]      The capitalized terms in this paragraph and throughout the Introduction are further defined below in the "Facts Common to All Counts" section of the Complaint.  For the convenience of the Court, Attachment A is a list of the capitalized terms in the Complaint.

and other property securing the Loan.

**Borrower Defaults, and Trustee Acts to Enforce the Loan Agreement.**

5.      In April 2020, Borrower defaulted on its obligations under the Loan Agreement by failing to pay debt service when due, and further defaulted in June 2020 by failing to pay the Loan at maturity.  Trustee then acted to enforce the Loan Agreement and secure its rights in the Hotel and other property securing the Loan.

6.      Trustee filed lawsuits to enforce its rights under the Loan Agreement and secure the collateral that are pending and have been consolidated in Cook County, Illinois between Trustee, on the one hand, and Borrower and its affiliates on the other hand (the "Cook County Litigation").  As discussed below, if, in the Cook County Litigation, the court interprets various agreements related to the Loan and governing the operation of the Hotel consistent with the arguments advanced by Borrower and its affiliates, then there were breaches of the representations and warranties in the MLPA.

**The Underlying Agreements Amongst Borrower and Its Affiliates**

7.      The Cook County Litigation arises out of Borrower's loan default and Borrower's 2005 decision to subdivide the larger Palmer House Hotel complex into three separate parcels, according to the operations conducted on each respective parcel.  Borrower assigned ownership of two of these parcels to affiliates.  Following Borrower's subdivision, the larger Hotel complex consisted of the following parcels, all owned by Borrower and its affiliates – (i) a Hotel parcel owned by Borrower and operated by Borrower's affiliate, Thor Palmer House Hotel, LLC ("Thor Hotel"); (ii) a parcel of retail shops owned by Borrower's/Guarantor's affiliate, Thor Palmer House Retail Shops, LLC ("Thor Retail"); and (iii) an office/annex building (the "Annex") owned by Borrower's affiliate, Thor Palmer House Office, LLC ("Thor Office").

8.      The Hotel does not, and cannot, effectively operate without full operational access to the Annex.  Similarly, the Annex does not, and cannot, effectively operate separately from the Hotel.  To address these issues following Borrower's subdivision of the Palmer House Hotel complex, Borrower and its affiliates Thor Retail and Thor Office executed and recorded a Reciprocal Easement and Operating Agreement dated December 11, 2006 (the "REA") that, among other things, grants the Hotel owner use and access rights in perpetuity to space in the Annex necessary and materially critical to the Hotel's operations, and grants the Annex owner use and access rights in perpetuity to space in the Hotel and retail shops.

9.      Also in December 2006, Borrower's affiliates Thor Office and Thor Hotel entered into the first of several license agreements requiring Thor Hotel to pay Thor Office for the Hotel's access to and use of the Annex that is provided for in the REA.  The license agreement at issue in this dispute is the December 11, 2009, Temporary License Agreement (the "Temporary License Agreement"), which was amended and extended by Borrower's affiliates three times through August 20, 2018.

10.      JPMCB knew about and understood the importance of the REA and the risk to Hotel's operations if Thor Office denied the Hotel access to the space in the Annex.  The issue as to the scope and meaning of the Temporary License Agreement was discussed during negotiation of the Loan Agreement, and the Loan Agreement references both the REA and the Temporary License Agreement.

**Borrower's and its Affiliates' Arguments in the Cook County Litigation**

11.      Thor Office has asserted a counterclaim and Borrower, Thor Office and other affiliates have defenses in the Cook County Litigation that allege the Temporary License Agreement expired, and that Trustee therefore has no use or access rights to the space in the Annex

necessary for the Hotel operations. This position if accepted in that action and adjudicated to be the correct interpretation of the relevant documents, would materially and adversely affect Hotel's operations.

12. Trustee has suffered damages and continues to suffer damages as a result of these actions by Borrower and its affiliates, which constitute an injury in fact. Trustee has incurred, and continues to incur, substantial legal fees in connection with defending the Cook County Litigation and challenging the arguments raised by Borrower's affiliates. These arguments have raised uncertainty as to the Trustee's ability to operate the Hotel, and the value of the Hotel in any sale following foreclosure. JPMCB has agreed to indemnify the Trust for the damages caused by its breaches of the MLPA, as described below.

**Borrower's and JPMCB's Respective Breaches of the Loan Agreement and MLPA**

13. Trustee is defending the claims asserted in the Cook County Litigation, and such efforts benefit both the assignee of the Loan Agreement and JPMCB, which made representations in the MLPA regarding the Loan Agreement. If the Court in the Cook County Litigation determines, however, that Borrower and its affiliates are correct regarding the scope and effect of the Temporary License Agreement, then Borrower necessarily breached its representations and warranties to JPMCB in the Loan Agreement. In such event, then JPMCB in turn necessarily breached the MLPA, which incorporated Borrower's representations in the Loan Agreement.

14. Trustee brings this action to preserve and prosecute claims against JPMCB for breaches of representations and warranties in the MLPA in the event Trustee's defenses in the Cook County Litigation are unsuccessful, and the Court determines the scope and effect of the Temporary License Agreement are consistent with the arguments made by Borrower and its affiliates.

## PARTIES, JURISDICTION, AND VENUE

15.    Plaintiff Trustee is a national banking association with its designated main office located in Sioux Falls, South Dakota.  As a national bank, Trustee is a citizen of South Dakota.  Trustee acts as the trustee for the beneficiaries of the commercial mortgage-backed security trust (the "Trust") known as the J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH.

16.    Non-party Situs Holdings, LLC is the special servicer for Trustee (the "Special Servicer" or "Situs"), and the Trustee acts by and through the Special Servicer pursuant to the TSA.  As such, Situs services and manages the Loan and enforces the terms of the Loan Documents.

17.    JPMCB is a national banking association with its designated main office located in Columbus, Ohio.  As a national bank, JPMCB is a citizen of Ohio.  In Section 13 of the MLPA, JPMCB "consent[ed] to service of process upon it by mailing a copy thereof by certified mail addressed to it as provided for notices [in the MLPA]."

18.    Borrower, a non-party to this proceeding, is a co-mortgagor of the Hotel, and the obligor under the Loan Agreement that has been assigned to Trustee by operation of the TSA.  Borrower is a party to the REA but is not a party to the Temporary License Agreement.

19.    Non-party Thor Office is the Borrower's affiliate that owns the Annex.  Thor Office is a party to the REA and the Temporary License Agreement.

20.    Non-party Thor Retail is the Borrower's affiliate that owns the retail shops.  Thor Retail is a party to the REA but is not a party to the Temporary License Agreement.

21.    Non-party Thor Hotel is a co-mortgagor of the Hotel and the Borrower's affiliate that is the Operating Lessee of the Hotel.  Thor Hotel is a party to the Temporary License

Agreement but is not a party to the REA.

22.    Jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

23.    Venue is proper in this Court pursuant to Section 13 of MLPA and 28 U.S.C. § 1391(c) & (d).

## FACTS COMMON TO ALL COUNTS

### A.    The Hotel and Related Parcels

24.    The address of the Hotel is 17 East Monroe Street in Chicago, Illinois.  The Hotel features 1,641 guestrooms, more than 130,000 feet of meeting space, seven ballrooms and restaurants.  The Hotel's facilities and amenities are located on 21 floors of a building, which also contains retail shops located on multiple floors.

25.    The Annex is a separate building attached to the Hotel.  The Annex contains critical mechanical systems for providing the Hotel with air conditioning, telephone, and internet services. The Annex also contains the Hotel's employee cafeteria, meeting rooms and storage space, and the Hotel's lobby-area restrooms located adjacent to the Hotel's front desk.

26.    Borrower purchased the real property comprising the larger hotel, retail, and office complex in August 2005.  At that time, the Hotel, Annex, and retail shops were part of a single legal parcel, sharing the Palmer House parcel legal description and street address.

27.    In December 2006, Borrower split ownership of this larger complex of the Hotel, Annex, and retail shops among three affiliated entities, with (i) Borrower retaining ownership of the real estate improved with the Hotel, with its affiliate Thor Hotel serving as the Operating Lessee of the Hotel, (ii) Thor Office acquiring the Annex, and (iii) Thor Retail acquiring retail

shops located within the Hotel.  The Real Property Transfer Tax Declaration attached to the vesting deeds granted to Thor Office and Thor Retail states that "no consideration" was given for Borrower's transfers because each was a "transfer to a related entity."

**B.    The REA and Temporary License Agreement**

28.    Following Borrower's separation of the ownership of these three parcels, the Hotel, Annex, and retail shops continued operating just as before the parcels were broken out into these three parcels.  Each entity continued to access and use space located in the parcels of its affiliated entities.

29.    Borrower and its affiliates recognized that the Hotel and retail shops could not be operated separately from the Annex, and the Annex could not be operated separately from the Hotel and retail shops.  Accordingly, Borrower, Thor Office and Thor Retail executed and recorded the REA in December 2006.  True and correct copies of the REA dated December 11, 2006, and its amendment, are attached hereto as Exhibit 4.

30.    The REA provides continued access and usage rights amongst the parcels that run with the land in perpetuity for the benefit of future owners.  This was critical for the Borrower and the Hotel, which could not be operated without access to the mechanical components and use of other facilities in the Annex.

31.    In December 2006, Thor Office and Thor Hotel entered into the first of a series of license agreements and amendments thereto.  The operative license agreement is the December 11, 2009, Temporary License Agreement, which purports to grant rights to the Hotel's owner no greater than those rights granted in the REA.  The Temporary License Agreement provides a stream of income to Thor Office, as the owner of the Annex, by requiring the Hotel to pay a monthly fee for ongoing use of the Annex.  The term of the last amendment to the Temporary

License Agreement expired on August 9, 2018.  A true and correct copy of the original 2006 license is attached hereto as Exhibit 5.  True and correct copies of the December 11, 2009, Temporary License Agreement, and subsequent amendments are attached hereto as Exhibit 5.

32.     Neither the original license agreement, the Temporary License Agreement, nor any amendments thereof, have been recorded in any governmental official records.  Borrower and Thor Office did not enter into any written license agreement for any period after August 9, 2018.

33.     The REA is a 203-page publicly-recorded document.  The Temporary License Agreement is a 5-page unrecorded document not otherwise publicly available.

34.     The Hotel would not have been financeable through a commercial lender if, as Borrower and its affiliates now allege in the Cook County Litigation, the Temporary License Agreement is the sole grant of use and access rights to space in the Annex necessary for the Hotel's operations because such rights are not addressed in the REA.  As discussed below, this allegation was not made by until 2022, when Trustee moved for summary judgment in the Cook County Litigation and obtain a dismissal of all of Borrower's affirmative defenses.

C.     **The Loan**

35.     On June 8, 2018, JPMCB and Borrower entered into the Loan Agreement.  Borrower also executed a Promissory Note dated June 8, 2018, in the original principal amount of $333,200,000 (the "Note").  A true and correct copy of the Note is attached hereto as Exhibit 6.

36.     To secure the Borrower's obligations under the terms of the Loan, Borrower and Thor Hotel, as co-mortgagors, granted to JPMCB, as the original mortgagee, and to its successors and assigns, senior perfected security interests in the Hotel and all other property owned by the co-mortgagors or in which the co-mortgagors had an interest, including, but not limited to, all easements (including the rights provided under the REA), all rights pursuant to a lease between

Hilton and Borrower, and additional rights, evidenced by, among other things, a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 8, 2018 and recorded in the Official Records on June 12, 2018 as Document No. 1816317208.  A true and correct copy of the Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 8, 2018, is attached hereto as Exhibit 7.

37.    The Loan Agreement, the Note, the Mortgage, the Guaranty (a related agreement also dated June 8, 2018), and all other documents evidencing, securing, or relating to the Loan have been endorsed or assigned to Trustee.

38.    Borrower made representations and warranties in the Loan Agreement that the Hotel had the ability to operate in the manner it was operating.  Inherent in that representation and warranty is the Hotel's unencumbered access and use of the Annex and its facilities.

39.    Trustee is informed and believes that the Temporary License Agreement was an accommodation that allowed Borrower's affiliates, Thor Office and Thor Hotel, to transfer funds and share expenses resulting from Hotel's operations and had no bearing on Hotel's right to access and use space in the Annex.

40.    JPMCB knew about the Temporary License Agreement when it originated the Loan and, on information and belief, discussed and considered the Temporary License Agreement during negotiation of the Loan Agreement.

41.    Trustee is defending the Cook County Litigation based on its information and belief as stated above.

**D.    The Cook County Litigation**

42.    Borrower defaulted on the Loan in April 2020 by failing to pay debt service when due, and further defaulted in June 2020 by failing to pay the Loan at maturity.

43. In response to Borrower's default, Trustee filed a foreclosure action on August 20, 2020 styled as *Wells Fargo Bank, N.A., as Trustee for the benefit of holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH v. Thor Palmer House Hotel & Shops LLC, a Delaware limited liability company, et al.*, Case No. 2020 CH 05460 (Circuit Court of Cook County, Illinois, Chancery Division) (the "Foreclosure Action").

44. On August 24, 2020, Trustee filed a motion to appoint a receiver for the oversight of the Hotel and related mortgaged property.  Trustee's motion was granted on October 21, 2020, and remains in effect.

45. On February 17, 2022, Trustee filed a motion for summary judgment in the Foreclosure Action, which was granted by an order dated July 6, 2022.  A judgment was entered on August 16, 2022.

46. On May 16, 2022, during briefing on Trustee's motion for summary judgment, Thor Office asserted a claim in the amount of $864,574.10 for purported past-due amounts owed to Thor Office under the Temporary License Agreement.

47. On June 14, 2023, Thor Office issued notice to Thor Hotel that Thor Office was terminating the Temporary License Agreement, copying Trustee's counsel.  Thor Office demanded $897,826.95 for outstanding fees purportedly due under the Temporary License Agreement and stated that unless Trustee paid this amount, Trustee would be required to vacate the Annex and return that space to Thor Office.  A true and correct copy of Thor Office's termination notice is attached as Exhibit 8.  Trustee disputes that any amounts are owed to Thor Office under the Temporary License Agreement.

48. In response to the disputes over the scope of the REA and Temporary License

Agreement, on July 11, 2023, Trustee has filed a second lawsuit in Cook County, Illinois styled as *Wells Fargo Bank, N.A., as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH, and Chad Crandell, solely in his capacity as court-appointed receiver in Case No. 2020CH05460 v. Thor Palmer House Office, LLC, a Delaware limited liability company; Thor Palmer House Hotel & Shops LLC, a Delaware limited liability company; and Thor Palmer House Hotel LLC, a Delaware limited liability company*, Civil Action No. 2023 CH 06380 (Circuit Court of Cook County, Illinois, Chancery Division) (the "Access Action").

49.    The Access Action seeks a declaration that the scope of the REA is sufficiently broad to provide the Hotel with its historic and necessary access and use rights to space in the Annex.  The Annex space is critical to the Hotel's routine operations as it was before Borrower assigned ownership in the Annex to its affiliate Thor Office because, among other reasons, the Hotel lobby's restrooms and utility rooms are located in the Annex.

50.    On October 17, 2023, Thor Office filed a counterclaim in the Access Action asserting that the now-terminated Temporary License Agreement granted the sole and exclusive rights to use and access the Annex space described therein.  Thor Office seeks damages in the Access Action for unpaid license fees and an order evicting the Hotel from the Annex.

51.    In the Access Action, Trustee is asserting that the REA, not the Temporary License Agreement, grants Hotel the right to use and access the Annex space as it existed when Borrower divided the parcel and assigned ownership of the Annex to its affiliate Thor Office.

52.    The Foreclosure Action and the Access Action were consolidated by order of the Court in the Cook County Litigation on or about May 3, 2024.

53.    As part of its claim in the Cook County Litigation, Trustee contends it is industry

custom and practice for a commercial mortgage loan to be secured by property in which the borrower/mortgagor has perpetual and sufficient use and access rights necessary for the borrower/mortgagor to operate its property.

54.     Borrower and its affiliate's assertion in the Cook County Litigation that the Temporary License Agreement grants the sole and exclusive rights to use and access the Annex space, and that such rights are unique from those rights granted in the REA, are inconsistent with the representations and warranties in the MLPA.  Such contentions also conflict with industry custom and practice because:

    a.  Borrower, which owned the Hotel that required access to the Annex, is not a party to the Temporary License Agreement.  Instead, Thor Hotel – the Operating Lessee of the Hotel – is a party to the Temporary License Agreement.

    b.  The Temporary License Agreement is purportedly cancellable at any time (subject to a 30-day notice) by Thor Office, which cancellation would – again, according to Borrower's/Guarantor's affiliate Thor Office – terminate the use and access rights in the Annex necessary for operation of the Hotel.

    c.  The Temporary License Agreement states that the rights granted to Borrower are not assignable, which would restrict the rights of a new owner, a foreclosing mortgagee, or a court-appointed receiver to operate the Hotel following Borrower's default.

    d.  The REA, on the other hand, grants use and access rights in perpetuity; if there were unique rights granted in the Temporary License Agreement necessary to operate the Hotel, industry custom and practice dictate that such rights would be addressed in the REA.

e.    The term of the Temporary License Agreement was significantly shorter than the Loan's term and would require renewal; the Temporary License Agreement did not include limitations or protections to Borrower, as the Hotel owner, against fee increases in future renewals, or that the Temporary License Agreement would be renewed.

f.    The Temporary License Agreement does not state that it is the sole and exclusive agreement granting the Hotel access and use rights to the Annex space.

55.    Trustee is asserting arguments in the Cook County Litigation consistent with its understanding of the representations and warranties made in the MLPA by JPMCB, the express terms of the REA and Temporary License Agreement, and industry practice.

56.    Trustee is defending against the arguments leveled by Borrower and its affiliates in the Cook County Litigation and, as of the date of filing this pleading, has incurred legal expenses in defending the counterclaim and addressing the Temporary License Agreement arguments asserted by Borrower and its affiliates in the Cook County Litigation.  These expenses continue to accrue and increase during the pendency of the Cook County Litigation.  Trustee further cannot quantify the precise amount or types of other damages that it will incur if it loses any access or use rights to the Annex, and Trustee is subject to significant uncertainty regarding its ability to operate the Hotel after its rightful foreclosure.  JPMCB is obligated to indemnify the Trust for the damages to it that are caused by the Cook County Litigation, which are breaches of the MLPA.

**E.    The MLPA Representations and Warranties**

57.    JPMCB was aware and had actual knowledge of the Temporary License Agreement when Borrower and JPMCB entered into the Loan Agreement.  The Temporary License Agreement is referenced therein.

-14-

58.     If the court accepts the position advocated in the Cook County Litigation by Borrower and its affiliates regarding the Temporary License Agreement, then JPMCB made representations and warranties in the MLPA that were materially inaccurate and were breached.

59.     In Section 7(c) of the MLPA, JPMCB provided representations and warranties as of the August 7, 2018, Closing Date with respect to the Loan that are set forth in Exhibit A of the MLPA.  Ex. 2 at 9. Section 4 in Exhibit A to the MLPA includes JPMCB's representation and warranty that JPMCB has no knowledge of an "Event of Default" under the Loan Agreement.  Ex. 2 at A-1.

60.     The term "Event of Default" is defined under Section 8.1 of the Loan Agreement. Events that constitute an "Event of Default" under Section 8.1(v) include:

> "[I]f any representation or warranty made by Borrower or Operating Lessee herein or in any other Loan Document, or in any report, certificate, financial statement or other instrument, agreement or document furnished to Lender ***shall have been false or misleading in any material respect*** as of the date the representation or warranty was made."

Ex. 1 at 116 (Emphasis added).

61.     Based on the above provisions of the MLPA and Loan Agreement, JPMCB represented and warranted in the MLPA that it did not have knowledge of any breach of a representation and warranty in the Loan Agreement.  In the event the Temporary License Agreement has the meaning advocated by Borrower and its affiliates, however, JPMCB was effectively aware of numerous breaches of the Loan Agreement's representations and warranties. The applicable Loan Agreement representations and warranties are described below.

62.     By incorporating Loan Agreement Section 4.1.5 into the MLPA, JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation and warranty that Borrower or Thor Hotel was party to any agreement or instrument, or subject to any restriction, which would be reasonably likely to affect Borrower materially and adversely, Thor

Hotel, the Hotel property, or the business, properties or assets, operation or condition (financial or otherwise) of Borrower or Thor Hotel.  The interpretation, scope and effect of the Temporary License Agreement and REA, as alleged by Borrower and its affiliates including Thor Hotel, would result in an agreement and a restriction that materially and adversely affects the Hotel property, Borrower and Thor Hotel, and their business, properties and assets, operations, and condition, financial and otherwise.

63.    By incorporating Loan Agreement Section 4.1.8 into the MLPA, JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation and warranty that the Loan Documents did not contain any untrue statement of material fact or omitted any material fact necessary to make statements in the Loan Documents misleading.  The interpretation, scope, and effect of the Temporary License Agreement and REA, as alleged by Borrower's affiliates, would render such Loan Documents misleading.

64.    By incorporating Loan Agreement Section 4.1.33 into the MLPA, JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation that the documents and information provided by Borrower were true, complete, and accurate in all material respects.  The interpretation, scope, and effect of the REA and Temporary License Agreement, as alleged by Borrower and its affiliates, would render such documents materially misleading.

65.    By incorporating Loan Agreement Section 4.1.11 into the MLPA, JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation and warranty that either Borrower or Thor Hotel had any unusual forward or long-term commitments that would have a material adverse effect on Borrower or Thor Hotel's financial condition or the value of the property.  The interpretation, scope, and effect of the Temporary License Agreement,

as alleged by Borrower's affiliates including Thor Hotel, would constitute unusual forward or long-term commitments that would have a material adverse effect on Borrower's and/or Thor Hotel's financial condition, as well as the value of the property.

66.    By incorporating Loan Agreement Section 4.1.22 into the MLPA, JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation and warranty that the Hotel had the necessary rights, permits, licenses, and certifications necessary to continue operating as a hotel and that Thor Hotel would keep and maintain all licenses necessary for the operation of the Hotel.  The interpretation, scope, and effect of the Temporary License Agreement and REA, as alleged by Borrower's affiliates, would mean that the Hotel did not in fact have such licenses and approvals.

67.    By incorporating Loan Agreement Section 4.1.33 into the MLPA, JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation and warranty that all material facts had been disclosed, and there were no material facts that had not been disclosed that could cause a representation or warranty to be materially misleading.  The interpretation, scope, and effect of the Temporary License Agreement and REA, as alleged by Borrower's affiliates, would render such documents materially misleading.

68.    By incorporating Loan Agreement Section 4.2 into the MLPA and through operation of the survival rights granted thereunder, Trustee could rely on all representations, warranties, covenants, and agreements made in the Loan Agreement and the other Loan Documents.

69.    The Hotel cannot operate effectively without access to, and use of, the Annex space described in the Temporary License Agreement.

70.    The same allegations by Borrower and its affiliates in the Cook County Litigation,

if determined to be the proper scope of the Temporary License Agreement and REA, also would be a "Material Document Defect" as that term is defined in Sections 7(f) and 8(a) of the MLPA. Under Section 8(a) of the MLPA, a Material Document Defect occurs, among other things, when "any document required to be delivered [by the Seller] to the Purchaser pursuant to Section 3 [of the MLPA] is defective" and "such Defect . . . materially and adversely affects the value of the Mortgage Loan" or the interests now held by Trustee.  Ex. 2 at 9-10.

71.    Section 3 of the MLPA required JPMCB to deliver to Trustee, or cause to be delivered to Trustee, the "Mortgage File" as defined in the TSA, which includes any "material written agreements" related to the Loan such as the agreements, licenses and permits required to operate the Hotel in the manner the Hotel had historically operated.  Ex. 2 at 3-4.  If Borrower's affiliates prevail in the Cook County Litigation, JPMCB failed to deliver agreements that grant perpetual access and use rights in the Annex.

72.    Under Section 8 of the MLPA, JPMCB is responsible for losses caused by Material Document Defects.  If the allegations leveled by Thor Office and Thor Hotel in the Cook County Litigation are true and correct, there was a Material Document Defect because the Temporary License Agreement was not extended and there was no right or ability by the Trust to enforce or extend that right.  A judgment in favor of Thor Office would mean that the Material Document Defect had an adverse impact on the value of the Loan.

73.    On information and belief, in the event the interpretation of the Temporary License Agreement and REA as alleged in the Cook County Litigation is adjudicated to be correct, each of these breaches of the representations and warranties was known to JPMCB at the time the MLPA became effective in August 2018.  Section 15 of the MLPA also provides that the "warranties and representations and the agreements made by . . . [JPMCB] [in the MLPA] shall survive delivery

of the Mortgage Loan to the Trustee until the termination of the T[SA]." Ex. 2 at 12. JPMCB has an ongoing obligation to cure all Material Document Defects and honor the representations and warranties at issue in this lawsuit.

74.     Pursuant to Section 8 of the MLPA, JPMCB is obligated to "indemnify the Trust in respect of the Mortgage Loan for the losses directly related to the Material Breach or Material Document Defect" or JPMCB must repurchase the Loan. Ex 2 at 10.

**F.      Trustee Provided Timely Notice to JPMCB**

75.     Section 8 of the MLPA provides that JPMCB is to receive notice of any breach and a 90-day period to remedy the breach.

76.     Trustee, acting through Special Servicer, provided such notice to JPMCB by letter on January 24, 2024. A true and correct copy of the Notice letter is attached hereto as Exhibit 9.

77.     JPMCB, through counsel, denied breaching the MLPA by letter dated February 13, 2024. A true and correct copy of JPMCB's response letter is attached hereto as Exhibit 10.

78.     All conditions precedent has occurred or been performed.

## <u>COUNT I</u>

**Breach of Contract**
**(Material Breach of the MLPA)**

79.     Trustee incorporates paragraphs 1 through 78 as if fully set forth herein.

80.     The MLPA is governed by New York law and constitutes a contract under New York law.

81.     Access to and use of the Annex space is critical to the effective operation of the Hotel.

82.     The MLPA contains representations and warranties, as described above that:

a.      JPMCB represented and warranted it had no knowledge that contradicted

Borrower's representation and warranty that Borrower or Thor Hotel was party to an agreement or instrument, or subject to a restriction, which would be reasonably likely to affect the Hotel materially and adversely, or Borrower.

b. JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation and warranty that there was no material financial obligation under any agreement or instrument to which either Borrower or Thor Hotel was a party, other than certain defined ordinary course obligations and obligations under the Loan Documents.

c. JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation and warranty that there was no untrue or misleading statement of facts in the Loan Documents or material facts omitted from the Loan Documents, or that any of the Loan Documents were misleading in any material respect.

d. JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation and warranty that there were no long-term commitments or other circumstances that would have materially and adversely affected Borrower's or Thor Hotel's financial condition, or the value of the Hotel property.

e. JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation and warranty that the documents and information provided by Borrower were true, complete, and accurate in all material respects.

f. JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation and warranty that Borrower and the Hotel had all licenses, permits and approvals necessary to operate the Hotel as it had been

historically operating.

g.  JPMCB represented and warranted it had no knowledge that contradicted Borrower's representation and warranty that Borrower had disclosed all material facts related to the Loan and operation of the Hotel and it had not failed to disclose any material fact that could cause other information to be materially misleading.

83.  Trustee had the right to rely on each representation and warranty in the Loan Documents notwithstanding any investigation by Trustee.

84.  JPMCB breached the foregoing representations and warranties by virtue of the Cook County Litigation counterclaim alleging that the Temporary License Agreement created unique and exclusive rights to access and use the Annex space.

85.  As a result of the breach, Trustee has incurred damages for legal fees to defend the counterclaim and to address defenses in the Cook County Litigation and continues to incur damages defending the claim and addressing defenses.  Such damages continue to accrue and increase.

86.  Further, if Borrower's affiliates prevail in the Cook County Litigation, the Hotel may lose its access to and use of the Annex space and would incur additional damages as a result. In the interim, the position asserted by Borrower and its affiliates in the Cook County Litigation has raised uncertainty as to the ability of Trustee to operate the Hotel, and the value of the Hotel in any sale following foreclosure.  Declaratory relief is needed to address that uncertainty here or in the Cook County Litigation.

87.  Such an outcome in the Cook County Litigation would breach representations and warranties made by JPMCB in Section 7 of the MLPA.  The breach of Section 7 of the MLPA is also a Material Breach under Section 8 of the MLPA and entitles Trustee to pursue all remedies

allowed under the MLPA and New York law.

88.     The remedies for breaches of Section 7 and Section 8 of the MLPA require JPMCB to indemnify the Trust for losses directly related to a Material Breach and include having JPMCB repurchase the Loan from the Trust.

WHEREFORE, Trustee respectfully requests that the Court, following any determination in the Cook County Litigation consistent with the argument advanced by Borrower and its affiliates and/or that Thor Office has prevailed on its counterclaim, enter judgment as follows:

     a.  Declaring that JPMCB has committed a Material Breach of the MLPA.

     b.  Declaring that JPMCB is obligated to indemnify the Trustee for the losses directly related to the Material Breaches of the MLPA.

     c.  Awarding actual damages to Trustee in an amount to be proved at trial, including the cost; and expense of defending against the claims made in the Cook County Litigation, and in this proceeding.

     d.  Directing JPMCB to repurchase the Loan.

     e.  Awarding such other and further relief as the Court deems necessary or appropriate.

## COUNT II

**Breach of Contract**
**(Material Document Defect)**

89.     Plaintiff incorporates paragraphs 1 through 88 as if fully set forth herein.

90.     The MLPA is governed by New York law and constitutes a contract under New York law.

91.     Access to and use of the Annex space is critical to the effective operation of the Hotel.

92.    Pursuant to Section 7(f) of the MLPA, JPMCB was required to provide the Trust with "prompt notice of any Material Breach or Material Document Defect that materially and adversely affects the value of the Mortgage Loan, the Property or the interests of Trustee or any Certificate holder therein."

93.    Under Section 8(a) of the MLPA, a Material Document Defect occurs, among other things, when "any document required to be delivered [by the Seller] to the Purchaser pursuant to Section 3 [of the MLPA] is defective" and "such Defect . . . materially and adversely affects the value of the Mortgage Loan or the interests of the Purchaser."

94.    Section 8(a) further provides that a "Defect" exists in any documents that are "required in connection with (i) *an imminent enforcement of the mortgagee's rights or remedies under the Mortgage Loan*; (ii) *defending any claim asserted by the Borrower or third party with respect to the Mortgage Loan*; [or] (iii) establishing the validity or priority of any lien on any collateral securing the Mortgage Loan."  (Emphasis added).

95.    JPMCB breached Sections 7(f) and 8(a) of the MLPA based on the counterclaim and defenses asserted by Borrower and its affiliates alleging that the Temporary License Agreement created unique and exclusive rights to access and use the Annex space, and that Thor Office could terminate those rights at will and the REA does not create the required access and use rights to the Annex.

96.    Borrower's affiliate raised the counterclaim that Trustee is defending in the Cook County Litigation.

97.    If Borrower and its affiliates succeed in their arguments in the Cook County Litigation, including, but not limited to, Thor Office's counterclaim, it constitutes a Material Document Defect regarding the REA and the Temporary License Agreement under Sections 7(f)

and 8(a) of the MLPA.

98.     A Material Document Defect is a breach of the MLPA and entitles Trustee to pursue all remedies allowed under the MLPA and New York law.  The remedies for breaches of Section 7 and Section 8 of the MLPA require JPMCB to indemnify the Trust for losses directly related to the Material Document Defect and include having JPMCB repurchase the Loan from the Trust.

99.     As a result of this breach, Trustee has incurred damages for legal fees to defend the counterclaim and to respond to the Temporary License Agreement issues in the Cook County Litigation and continues to incur damages defending the claim and responding to these issues.

100.    Further, if Borrower and its affiliates prevail in the Cook County Litigation, the Hotel may lose its access to and use of the Annex space and would incur additional damages as a result.  In the interim, the position asserted by Borrower's affiliates in the Cook County Litigation has raised uncertainty as to the arguments of Borrower and its affiliates have raised uncertainty as to the Trustee's ability to operate the Hotel, and the value of the Hotel in any sale following foreclosure.

101.    The remedies for breaches of the MLPA include having JPMCB repurchase the Loan from the Trust.

WHEREFORE, Trustee respectfully requests that the Court, following any determination in the Cook County Litigation consistent with the arguments advanced by Borrower and its affiliates, and/or that Thor Office has prevailed on its counterclaim, enter judgment as follows:

    a.  Declare that JPMCB breached its MLPA obligation to provide Loan Documents that did not have Material Document Defects.

    b.  Declaring that JPMCB is obligated to indemnify the Trustee for the losses directly related to the Material Document Defects of the MLPA.

    c.  Award actual damages to Trustee in an amount to be proved at trial, including the cost and expense of defending against the claims made in the Cook County Litigation, and in this proceeding.

    d.   Direct JPMCB to repurchase the Loan.

    e.   Enter a judgment directing JPMCB to repurchase the Loan.

    f.   Award such other and further relief as the Court deems necessary or appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Trustee respectfully requests that the Court, following any determination in the Cook County Litigation consistent with the arguments advanced by Borrower and its affiliates, and/or that Thor Office has prevailed on its counterclaim, enter judgment in favor of the Trustee as follows:

    a.   Declaring that JPMCB has breached the representations and warranties in the MLPA.

    b.   Declaring that JPMCB breached its Material Documents Defect obligations under the MLPA.

    c.   Declaring that JPMCB is obligated to indemnify the Trustee for the losses directly related to the Material Breaches and Material Document Defects of the MLPA.

    d.   Awarding damages to Trustee for breaches of the MLPA in an amount to be proved at trial, including the cost and expense of defending against the claims made in the Cook County Litigation, and in this proceeding.

    e.   Directing JPMCB to repurchase the Loan.

    f.   Entering a judgment directing JPMCB to repurchase the Loan.

    g.   Awarding such other and further relief as the Court deems necessary or appropriate.

DATED: July 25, 2024

                **KILPATRICK TOWNSEND & STOCKTON LLP**
                **1114 Avenue of the Americas**
                **New York, New York 10036**
                212.775.8700
                fwhitmer@kilpatricktownsend.com

-25-

**Attorney for Wells Fargo Bank, N.A., Not in Its Individual Capacity, but solely in its Capacity as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH, acting by and through Situs Holdings, LLC, as special servicer under the Trust and Servicing Agreement, dated August 7, 2018**

**By: __/s/ Frederick L. Whitmer_____**

      **FREDERICK L. WHITMER (FW-8888)**
      **A Member of the Firm**