EXHIBIT 2

**EXECUTION VERSION**

MORTGAGE LOAN PURCHASE AND SALE AGREEMENT

Between

J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP.,

PURCHASER,

and

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,
SELLER

Dated as of July 27, 2018

J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH
Commercial Mortgage Pass-Through Certificates, Series 2018-PHH

This Mortgage Loan Purchase and Sale Agreement, dated as of July 27, 2018 ("Agreement"), is between JPMorgan Chase Bank, National Association, a national banking association (together with its successors and assigns, "JPMCB" or the "Seller"), and J.P. Morgan Chase Commercial Mortgage Securities Corp., a Delaware corporation (together with its successors and assigns, the "Purchaser").

W I T N E S S E T H:

WHEREAS, pursuant to that certain Loan Agreement, dated as of June 8, 2018 (as may be amended from time to time, the "Loan Agreement"), by and between JPMCB and, as lender thereunder (in such capacity, the "Lender"), and Thor Palmer House Hotel & Shops LLC, a Delaware limited liability company, as borrower thereunder (the "Borrower"), the Lender made a mortgage loan (the "Mortgage Loan") to the Borrower, which Mortgage Loan is evidenced by one promissory note in the principal amount of $333,200,000, dated June 8, 2018, and made by the Borrower in favor of the Lender (the "Note").

WHEREAS, the Seller currently holds the Note;

WHEREAS, the Mortgage Loan is secured by, among other things, a first mortgage lien on the Borrower's fee interest in the Palmer House Hilton, a full service hotel in Chicago, Illinois;

WHEREAS, the Purchaser desires to purchase from the Seller, and the Seller desires to sell to the Purchaser the Mortgage Loan pursuant to the terms of this Agreement;

WHEREAS, the Purchaser intends to deposit the Mortgage Loan into a trust (the "Trust"), the ownership interests in which will be evidenced by J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH (the "Certificates") to be issued pursuant to the Trust and Servicing Agreement, dated as of August 7, 2018 (as may be amended from time to time, the "Trust and Servicing Agreement"), by and between the Purchaser, as depositor, KeyBank National Association, as servicer (the "Servicer"), AEGON USA Realty Advisors, LLC, as special servicer (the "Special Servicer"), Wells Fargo Bank, National Association, as certificate administrator (in such capacity, the "Certificate Administrator") and as trustee (in such capacity, the "Trustee"), and Park Bridge Lender Services LLC, as operating advisor (the "Operating Advisor"); and

WHEREAS, capitalized terms used but not defined in this Agreement shall have the meanings given to them in the Loan Agreement or the Trust and Servicing Agreement, as the context may require;

NOW, THEREFORE, in consideration of these premises and the mutual agreements hereinafter set forth, the parties hereto agree as follows:

SECTION 1    Sale and Conveyance of the Mortgage Loan; Possession of Mortgage File.  Effective as of August 7, 2018 (the "Closing Date"), subject to the Seller's receipt of the purchase price referred to below, the Seller does hereby sell, transfer, assign, set

over and otherwise convey to the Purchaser, without recourse (subject to <u>Sections 7</u> and <u>8</u>), and the Purchaser does hereby purchase and acquire from the Seller, Seller's right, title and interest in and to the Mortgage Loan (including any and all payments on the Mortgage Loan, whether in respect of principal, interest or otherwise, due, to become due or collected in respect of the Mortgage Loan, on or after the Closing Date, except for the Retained Interest Amount (which Retained Interest Amount shall belong to the Seller) and the Mortgage Loan Documents, all collateral security related to the Mortgage Loan (including, without limitation, all such right, title and interest of the Seller in, to and under the Mortgage) and all proceeds of the foregoing (collectively, the "<u>Transferred Loan Assets</u>").  For the avoidance of doubt, the Mortgage Loan Documents shall not include the Securitization Indemnification Agreements, and the rights of the Seller and other parties to the Securitization Indemnification Agreements thereunder will not be part of the Transferred Loan Assets.

Upon the sale of the Mortgage Loan, the ownership of the Note and the other contents of the Mortgage File (as defined in the Trust and Servicing Agreement) shall be vested in the Purchaser and immediately thereafter, upon deposit of the Mortgage Loan into the Trust, the Trustee, and the ownership of records and documents with respect to the Mortgage Loan prepared by or which come into the possession of the Seller shall immediately vest in the Purchaser and immediately thereafter, upon deposit of the Mortgage Loan into the Trust, the Trustee.  The Seller's records will accurately reflect the sale of the Mortgage Loan to the Purchaser.  In addition, the Seller shall cause all funds on deposit in escrow or reserve accounts maintained with respect to the Mortgage Loan, whether such accounts are held in the name of the Seller or any other name, to be transferred to the Purchaser or the Servicer at the request of the Purchaser within three (3) Business Days after the Closing Date.

The purchase price (the "<u>Purchase Price</u>") for the Transferred Loan Assets shall be paid to the Seller in immediately available funds on the Closing Date or other mutually agreed upon date in an amount equal to the amount to be set forth as such purchase price in the Bill of Sale (substantially in the form of <u>Exhibit B</u> hereto) to be entered into between the parties to this Agreement in connection with this Agreement

The Purchaser shall be entitled to any and all payments on the Note, whether in respect of principal, interest or otherwise, due, to become due or collected in respect of the Note, on or after the Closing Date, except for the Retained Interest Amount.  The Seller and the Purchaser acknowledge and agree that the total amount of interest due on the Mortgage Loan for the Payment Date in August 2018 is $1,201,974.57, of which $310,779.34 shall be paid to the Trust, and the remaining $891,195.23 shall be returned to the Seller  as the "<u>Retained Interest Amount</u>", which amount represents any interest that accrued through and including the day prior to the Closing Date, as adjusted by the difference (if any) between LIBOR for the Mortgage Loan Interest Accrual Period (as defined in the Trust and Servicing Agreement) for the Payment Date in August 2018 and LIBOR for the first Certificate Interest Accrual Period (as defined in the Trust and Servicing Agreement).  Any Retained Interest Amount shall belong to, and shall be remitted to, the Seller in accordance with <u>Section 3.4(c)(xii)</u> of the Trust and Servicing Agreement.

SECTION 2     <u>Books and Records; Certain Funds Received on or After the Closing Date</u>.  From and after the sale of the Mortgage Loan to the Purchaser, record title to the

Mortgage and the Note shall be transferred to the Trustee in accordance with the Trust and Servicing Agreement. Any funds due on or after the Closing Date (other than the Retained Interest Amount) in respect of the Mortgage Loan received by the Seller shall be held in trust for the benefit of the Trustee as the owner of the Mortgage Loan and shall be transferred promptly to the Trustee.

The transfer of the Mortgage Loan shall be reflected on the Seller's balance sheet and other financial statements as a sale of the Mortgage Loan by the Seller to the Purchaser. The Seller intends to treat the transfer of the Mortgage Loan to the Purchaser as a sale for tax purposes.

The transfer of the Mortgage Loan shall be reflected on the Purchaser's balance sheet and other financial statements as the purchase of the Mortgage Loan by the Purchaser from the Seller. The Purchaser intends to treat the transfer of the Mortgage Loan from the Seller as a purchase for tax purposes.

SECTION 3    Delivery of Mortgage Loan Documents; Additional Costs and Expenses. In connection with the sale, transfer and assignment of the Mortgage Loan, the Seller shall deliver or cause to be delivered to the Purchaser or its designee: (i) on the Closing Date, the original Note (or if the Note has been lost, a lost note affidavit with a customary indemnity provision, together with a copy of such Note), endorsed without recourse to the order of the Trustee in the following form: "Pay to the order of Wells Fargo Bank, National Association, as Trustee for the benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH without recourse or warranty except as set forth in the Trust and Servicing Agreement dated as of August 7, 2018, between J.P. Morgan Chase Commercial Mortgage Securities Corp., as Depositor, KeyBank National Association, as Servicer, AEGON USA Realty Advisors, LLC, as Special Servicer, Wells Fargo Bank, National Association, as Certificate Administrator and as Trustee, and Park Bridge Lender Services LLC, as Operating Advisor", the Note and all endorsements thereon shall show a complete chain of endorsement from the original payee(s) to the Trustee and (ii) on or before the date occurring 5 days after the Closing Date (the "Delivery Date"), the documents or instruments with respect to the Mortgage Loan set forth in the definition of "Mortgage File" in Trust and Servicing Agreement.

If the Seller cannot deliver, or cause to be delivered, any of (a) the original recorded counterpart of the Mortgage or certified copies of the recorded counterparts of the Mortgage, (b) the original Assignment of Mortgage, in favor of the Trustee, and in a form that is complete and suitable for recording in the jurisdiction in which the Property is located to "Wells Fargo Bank, National Association, as Trustee for the benefit of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH", without recourse or (c) where applicable, a copy of each UCC-1 financing statement (and an original thereof shall have been sent for filing), together with a fully executed UCC-3 financing statement, in a form that is complete and suitable for filing, disclosing the assignment from the secured party named in such UCC-1 financing statement to the Trustee of the security interest in the personal property and other UCC collateral constituting security for repayment of the Mortgage Loan with evidence of filing or recording thereon (if intended to be recorded or filed), solely because of a delay caused by the public filing or recording office where

such document or instrument has been delivered for filing or recordation, the delivery requirements of this Section 3 shall be deemed to have been satisfied on a provisional basis as of the Delivery Date as to such non-delivered document or instrument, and such non-delivered document or instrument shall be deemed to have been included in the Mortgage File, if a duplicate original or a photocopy of such non-delivered document or instrument (certified by the applicable public filing or recording office, the applicable title insurance company or the Seller to be a true and complete copy of the original thereof submitted for filing or recording) is delivered to the Custodian on or before the Delivery Date, and either the original of such non-delivered document or instrument, or a photocopy thereof (certified by the appropriate county recorder's office, in the case of the documents and/or instruments referred to in clauses (a), (b) and (c) above to be a true and complete copy of the original thereof submitted for recording), with evidence of filing or recording thereon, is delivered to the Custodian within 180 days of the Closing Date (or within such longer period, not to exceed 18 months, after the Closing Date as the Custodian shall consent to, which consent shall not be unreasonably withheld so long as the Seller is , as certified in writing to the Custodian no less often than every 90 days, attempting in good faith to obtain from the appropriate public filing office or county recorder's office such original or photocopy).

In addition, the Seller shall deliver or cause to be delivered to the Servicer for its review, all required insurance policies or certificates issued by the insurers showing such insurance to be in effect on the Closing Date, together with proof of payment of premiums relating thereto (which may consist of such policies or certificates).

Each Assignment of Mortgage and each UCC-3 financing statement to be filed in the appropriate filing offices or record depositories shall be delivered by the Seller to the Purchaser or its designee for filing or recording, as applicable, by the Purchaser or its designee, on or promptly following the Closing Date. In the event that any such document is determined to be defective or not to be in compliance with the requirements of the applicable filing office or recording depository, or if any such document is lost or returned unrecorded because of a defect therein, the Seller shall promptly prepare a substitute document, and shall cause each such document to be duly submitted for filing or recording, as applicable. Notwithstanding anything to the contrary contained in this Section 3, in those instances where the public recording office retains the original Mortgage or Assignment of Mortgage, if applicable, after any has been recorded, the obligations of the Seller hereunder shall be deemed to have been satisfied upon delivery to the Custodian of a copy of such Mortgage or Assignment of Mortgage, if applicable, certified by the public recording office to be a true and complete copy of the recorded original thereof.

SECTION 4    Treatment as a Security Agreement. The Seller, concurrently with the execution and delivery hereof, has conveyed to the Purchaser, all of its right, title and interest in and to the Mortgage Loan. The parties intend that such conveyance of the Seller's right, title and interest in and to the Mortgage Loan pursuant to this Agreement shall constitute a purchase and sale and not a loan. If such conveyance is deemed to be a pledge and not a sale, then the parties also intend and agree that the Seller shall be deemed to have granted, and in such event does hereby grant, to the Purchaser, a first priority security interest in all of its right, title and interest in, to and under the Mortgage Loan, including all payments of principal or interest on the Mortgage Loan due on or after the Closing Date (other than the Retained Interest Amount, which

ACTIVE 232710712v.5

shall belong to the Seller), all other payments made in respect of the Mortgage Loan on or after the Closing Date and all proceeds thereof that may come due with respect to the Mortgage Loan and that this Agreement shall constitute a security agreement under applicable law.  If such conveyance is deemed to be a pledge and not a sale, the Seller consents to the Purchaser hypothecating and transferring such security interest in favor of the Trustee and transferring the obligation secured thereby to the Trustee.

SECTION 5    Covenant by the Seller.  The Seller agrees to execute and deliver such instruments and take such actions as the Purchaser may reasonably request in order to effectuate the purpose and to carry out the terms of this Agreement, all at its cost and expense, including delivering such assignment documents and/or endorsements applicable to the Transferred Loan Assets as directed by the Purchaser.  The Purchaser hereby irrevocably directs the Seller to execute and deliver to "Wells Fargo Bank, National Association, as Trustee for the benefit of the Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH", all assignments and/or endorsements of the Transferred Loan Assets that Purchaser is entitled to receive pursuant to this Agreement.

SECTION 6    **"AS-IS" SALE. THE SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OTHER THAN THOSE SET FORTH IN SECTION 7 OR EXHIBIT A. THE SALE OF THE TRANSFERRED LOAN ASSETS TO THE PURCHASER SHALL BE "AS IS" AND MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY (EXCEPT AS SPECIFICALLY SET FORTH IN OR REFERRED TO IN SECTIONS 7 AND 8 OR EXHIBIT A).**

SECTION 7    Representations and Warranties.

(a)    The Seller hereby represents and warrants to the Purchaser, as of the Closing Date, with respect to itself only, that:

(i)    the Seller is duly organized, validly existing, and in good standing as a national banking association under the laws of the United States;

(ii)    the Seller is duly qualified as a foreign corporation in good standing in all jurisdictions in which ownership or lease of its property or the conduct of its business requires such qualification, except where the failure to be so qualified would not have a material adverse effect on the Seller, and the Seller is conducting its business so as to comply in all material respects with the applicable statutes, ordinances, rules and regulations of each jurisdiction in which it is conducting business;

(iii)    the Seller has the power and authority to own its property and to carry on its business as now conducted;

(iv)    the Seller has duly executed and delivered this Agreement, the Seller has the power to execute, deliver and perform this Agreement, and neither the execution and delivery by the Seller of this Agreement, nor the consummation by the Seller of the transactions herein contemplated, nor the compliance by the Seller with the provisions hereof, will (A) conflict with or result in a breach of, or constitute a default under, any of

the provisions of the applicable organizational documents of the Seller or any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on the Seller or any of its properties, or any indenture, mortgage, contract or other instrument to which the Seller is a party or by which it is bound, or (B) result in the creation or imposition of any lien, charge or encumbrance upon any of the Seller's property pursuant to the terms of any such indenture, mortgage, contract or other instrument;

(v)    this Agreement constitutes a legal, valid and binding obligation of the Seller, enforceable against it in accordance with its terms (except as enforcement thereof may be limited by bankruptcy, receivership, conservatorship, reorganization, insolvency, moratorium or other laws affecting the enforcement of creditors' rights generally and by general equitable principles regardless of whether enforcement is considered in a proceeding in equity or at law);

(vi)    there are no legal or governmental proceedings pending to which the Seller is a party or of which any property of the Seller is the subject that, if determined adversely to the Seller, would reasonably be expected to adversely affect (A) the transfer of the Mortgage Loan and the Mortgage Loan Documents, (B) the execution and delivery by the Seller or enforceability against the Seller of the Mortgage Loan or this Agreement or (C) the performance of the Seller's obligations hereunder; to the Seller's knowledge, no such proceedings are threatened or contemplated by governmental authorities or threatened by others;

(vii)    the Seller is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state municipal or governmental agency, which default might have consequences that would materially and adversely affect the condition (financial or other) or operations of the Seller or its properties or might have consequences that would materially and adversely affect its performance hereunder;

(viii)    the Seller has not dealt with any broker, investment banker, agent or other person, other than the Purchaser, the Initial Purchaser and their respective affiliates, that may be entitled to any commission or compensation in connection with the sale of the Mortgage Loan or the consummation of any of the transactions contemplated hereby;

(ix)    all consents, approvals, authorizations, orders or filings of or with any court or governmental agency or body, if any, required for the execution, delivery and performance of this Agreement by the Seller have been obtained or made;

(x)    the Seller is duly qualified to transact business in the State of New York. The Seller is in compliance with the laws of the state in which the Property is located to the extent necessary so that a subsequent holder of the Mortgage Loan (including, without limitation, the Purchaser) that is in compliance with the laws of such state would not be prohibited from enforcing the Mortgage Loan solely by reason of any non-compliance by the Seller;

-6-

(xi)     the Seller is not, nor with the giving of notice or lapse of time or both would be, in violation of or in default under any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which the Seller is a party or by which it or any of its properties is bound, except for violations and defaults which individually and in the aggregate would not have a material adverse effect on the transactions contemplated hereby; and no consent, approval, authorization, order, license, registration or qualification of or with any such court or governmental agency or body is required for the consummation by the Seller of the transactions contemplated by this Agreement, other than any consent, approval, authorization, order, license, registration or qualification that has been obtained or made;

(xii)     the Seller is solvent and the sale of the Mortgage Loan hereunder will not cause it to become insolvent; the sale of the Mortgage Loan is not undertaken with the intent to hinder, delay or defraud any of the Seller's creditors; and

(xiii)     except for the agreed-upon procedures report obtained from the accounting firm engaged to provide procedures involving a comparison of information in loan files for the Mortgage Loan to information on a data tape relating to the Mortgage Loan (the "Accountant's Due Diligence Report"), the Seller has not obtained (and, through and including the Closing Date, will not obtain without the consent of the Purchaser) any "third party due diligence report" (as defined in Rule 15Ga-2 under the Exchange Act ("Rule 15Ga-2")) in connection with the transactions contemplated herein and in the Offering Circular and, except for the accountants with respect to the Accountants' Due Diligence Report, the Seller has not employed (and, through and including the Closing Date, will not employ without the consent of the Purchaser) any third party to engage in any activity that constitutes "due diligence services" within the meaning of Rule 17g-10 under the Exchange Act in connection with the transactions contemplated herein and in the Offering Circular.  The Initial Purchaser is a third-party beneficiary of the provisions set forth in this Section 7(a)(xiii).

(b)     The Purchaser represents and warrants to the Seller as of the Closing Date that:

(i)     it is a corporation duly organized, validly existing, and in good standing in the State of Delaware;

(ii)     it is duly qualified as a foreign corporation in good standing in all jurisdictions in which ownership or lease of its property or the conduct of its business requires such qualification, except where the failure to be so qualified would not have a material adverse effect on the Purchaser, and the Purchaser is conducting its business so as to comply in all material respects with the applicable statutes, ordinances, rules and regulations of each jurisdiction in which it is conducting business;

(iii)     it has the power and authority to own its property and to carry on its business as now conducted;

(iv)     it has duly executed and delivered this Agreement, it has the power to execute, deliver and perform this Agreement, and neither the execution and delivery by the Purchaser of this Agreement, nor the consummation by the Purchaser of the transactions herein contemplated, nor the compliance by the Purchaser with the provisions hereof, will (A) conflict with or result in a breach of, or constitute a default under, any of the provisions of the certificate of incorporation or by-laws of the Purchaser or any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on the Purchaser or any of its properties, or any indenture, mortgage, contract or other instrument to which the Purchaser is a party or by which it is bound, or (B) result in the creation or imposition of any lien, charge or encumbrance upon any of the Purchaser's property pursuant to the terms of any such indenture, mortgage, contract or other instrument;

(v)     this Agreement constitutes a legal, valid and binding obligation of the Purchaser enforceable against it in accordance with its terms (except as enforcement thereof may be limited by bankruptcy, receivership, conservatorship, reorganization, insolvency, moratorium or other laws affecting the enforcement of creditors' rights generally and by general equitable principles regardless of whether enforcement is considered in a proceeding in equity or at law);

(vi)     there are no legal or governmental proceedings pending to which the Purchaser is a party or of which any property of the Purchaser is the subject which, if determined adversely to the Purchaser, might interfere with or adversely affect the consummation of the transactions contemplated herein and in the Trust and Servicing Agreement and to the Purchaser's knowledge, no such proceedings are threatened or contemplated by governmental authorities or threatened by others;

(vii)     it is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state municipal or governmental agency, which default might have consequences that would materially and adversely affect the condition (financial or other) or operations of the Purchaser or its properties or might have consequences that would materially and adversely affect its performance hereunder;

(viii)     it has not dealt with any broker, investment banker, agent or other person, other than the Seller, the Initial Purchaser and their respective affiliates, that may be entitled to any commission or compensation in connection with the sale of the Mortgage Loan or the consummation of any of the transactions contemplated hereby;

(ix)     all consents, approvals, authorizations, orders or filings of or with any court or governmental agency or body, if any, required for the execution, delivery and performance of this Agreement by the Purchaser have been obtained or made;

(x)     it is not, nor with the giving of notice or lapse of time or both would be, in violation of or in default under any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which the Purchaser is a party or by which the Purchaser or any of its properties is bound, except for violations and defaults which individually and in the aggregate would not have a material adverse effect on the

transactions contemplated hereby; and no consent, approval, authorization, order, license, registration or qualification of or with any such court or governmental agency or body is required for the consummation by it of the transactions contemplated by this Agreement, other than any consent, approval, authorization, order, license, registration or qualification that has been obtained or made; and

(xi)    it (A) prepared one or more reports on Form ABS-15G (each, a "Form 15G") containing the findings and conclusions of the Accountant's Due Diligence Report and meeting the requirements of the Form 15G and Rule 15Ga-2 and any other rules and regulations of the Commission and the Exchange Act; (B) provided a copy of the final draft of each Form 15G to the Seller at least seven (7) Business Days before the date on which the first sale in the offering of the Certificates occurred (the "First Sale Date"); and (C) furnished the Form 15G to the Commission (as defined in the Trust and Servicing Agreement) on EDGAR at least five (5) Business Days before the First Sale Date as required by Rule 15Ga-2.

(c)    The Seller, with respect to itself only, further makes the representations and warranties as to the Mortgage Loan set forth in Exhibit A as of the Closing Date.

(d)    The representations and warranties of the parties hereto shall survive the execution and delivery and any termination of this Agreement and shall inure to the benefit of the respective parties (including, without limitation, the Trustee and the holders of the Certificates), notwithstanding any restrictive or qualified endorsement on the Note or Assignments of Mortgage or the examination of the Mortgage File.

(e)    Each party hereby agrees to promptly notify the other party of any breach of a representation or warranty contained in this Section 7 or Exhibit A of which it has knowledge.  The Seller's obligation to cure any breach or repurchase the Mortgage Loan pursuant to Section 8 shall constitute the sole remedy available to the Purchaser in connection with a breach of any representations or warranties contained in this Section 7 made by the Seller.

(f)    Pursuant to this Agreement or Section 2.9(a) of the Trust and Servicing Agreement, the Seller and the Purchaser shall be given prompt notice of any Material Breach or Material Document Defect that materially and adversely affects the value of the Mortgage Loan, the Property or the interests of the Trustee or any Certificateholder therein.  In addition, pursuant to Section 2.2(d) of the Trust and Servicing Agreement, the Seller and the Purchaser shall be given each 15Ga-1 Notice required thereunder; however, the Seller agrees that (i) a Repurchase Request Recipient under the Trust and Servicing Agreement will not, in connection with providing the Seller with any Rule 15Ga-1 Notice under the Trust and Servicing Agreement, be required to deliver any attorney-client privileged communication or any information protected by the attorney work product doctrine, (ii) any Rule 15Ga-1 Notice delivered to the Seller and the Purchaser under the Trust and Servicing Agreement is provided only to assist the Seller, Purchaser and their respective Affiliates in complying with Rule 15Ga-1 and/or any other law or regulation and (iii) (A) no action taken by, or inaction of, a Repurchase Request Recipient and (B) no information provided to the Seller or Purchaser pursuant to Section

-9-

2.2(d) of the Trust and Servicing Agreement by a Repurchase Request Recipient, shall be deemed to constitute a waiver or defense to the exercise of any legal right the Repurchase Request Recipient may have with respect to this Agreement or the Trust and Servicing Agreement.

SECTION 8    <u>Remedies Upon Breach of Representations and Warranties made by the Seller</u>.

(a)    If any document required to be delivered to the Purchaser or its designee pursuant to <u>Section 3</u> is not delivered as and when required, is not properly executed or is defective (any of the foregoing, a "<u>Defect</u>"), or if there is a breach of any representation or warranty made by a Seller relating to the Mortgage Loan as set forth in <u>Exhibit A</u> hereto, and in either case such Defect or breach materially and adversely affects the value of the Mortgage Loan or the interest of the Purchaser (or the holders of the Certificates) therein or if such Defect or breach relates to the Mortgage Loan being other than a Qualified Mortgage (a "<u>Material Document Defect</u>" and a "<u>Material Breach</u>," respectively), the party discovering such Material Document Defect or Material Breach shall promptly notify the Seller.  Notwithstanding the foregoing, no Defect (except for a Defect with respect to the documents described in <u>Section 3(i)</u> and the documents described in clauses (a), (b) and (c) of the second paragraph of <u>Section 3</u> or a Defect that causes the Mortgage Loan to be other than a Qualified Mortgage) shall be considered to be a Material Document Defect unless the document with respect to which the Defect exists is required in connection with (i) an imminent enforcement of the mortgagee's rights or remedies under the Mortgage Loan; (ii) defending any claim asserted by the Borrower or third party with respect to the Mortgage Loan; (iii) establishing the validity or priority of any lien on any collateral securing the Mortgage Loan; or (iv) any immediate significant servicing obligations, including without limitation, making a claim under a title policy.  Within 90 days of (i) the receipt by the affected Seller of notice of such Material Document Defect or Material Breach, as the case may be, or (ii)  the discovery of such Defect or breach by any party to the Trust and Servicing Agreement, in the case of any Defect or breach that causes the Mortgage Loan to be other than a Qualified Mortgage (such 90-day period, the "<u>Initial Resolution Period</u>"), the Seller shall (x) repurchase the Mortgage Loan at an amount equal to the Repurchase Price (as defined in the Trust and Servicing Agreement), (y) promptly cure such Material Document Defect or Material Breach, as the case may be, in all material respects or (z) if such Material Document Defect or Material Breach is not related to the Mortgage Loan not being a Qualified Mortgage, indemnify the Trust in respect of the Mortgage Loan for the losses directly related to such Material Breach or Material Document Defect, subject to receipt of a Rating Agency Confirmation from the Rating Agency with respect to such action; <u>provided</u>, that in the event that such Material Breach or Material Document Defect does not cause the Mortgage Loan to be other than a Qualified Mortgage and is capable of being cured but not within the Initial Resolution Period, and if the Seller has commenced and is diligently proceeding with the cure of such Material Breach or Material Document Defect, the Seller will have an additional 90 days to complete such cure (the "<u>Extended Resolution Period</u>"), or failing such cure, to repurchase the Mortgage Loan or indemnify the Trust in an amount equal to the Repurchase Price; <u>provided</u>, <u>further</u>, that with respect to such Extended Resolution Period, the Seller shall have

delivered an officer's certificate to the Trustee, the Certificate Administrator, the Operating Advisor and the Servicer setting forth the reason why such Material Breach or Material Document Defect is not capable of being cured within the Initial Resolution Period and what actions the Seller is pursuing in connection with the cure thereof and stating that the Seller anticipates that such Material Breach or Material Document Defect will be cured within the Extended Resolution Period. For the avoidance of doubt, no Liquidation Fee (as defined in the Trust and Servicing Agreement) shall be payable by the Seller in connection with a repurchase of the Mortgage Loan due to a Material Breach or a Material Document Defect hereunder if made in accordance with and within the Initial Resolution Period or the Extended Resolution Period, as applicable.

"Qualified Mortgage" shall mean a "qualified mortgage" within the meaning of Code Section 860G(a)(3) (but without regard to the rule in Treasury Regulations Section 1.860G-2(f)(2) that causes a defective loan to be treated as a "qualified mortgage").

(b)     In connection with the Seller's repurchase of the Mortgage Loan contemplated by this Section 8, (i) the Purchaser shall release or cause to be released to the designee of the Seller the Repurchase Mortgage File (as defined in the Trust and Servicing Agreement) and shall execute and deliver such instruments of transfer or assignment, in each case without recourse, representation or warranty (except that the Mortgage Loan is owned by the Trust and is being sold free and clear of all liens and encumbrances), as shall be prepared by such designee to vest in such designee the Mortgage Loan released pursuant hereto, and the Certificate Administrator, the Trustee, the Servicer and the Special Servicer shall have no further responsibility with regard to such Repurchase Mortgage File and (ii) the Purchaser shall release, or cause to be released, to the Seller any escrow payments and reserve funds (or portions thereof) held by the Trustee, or on the Trustee's behalf, in respect of the Mortgage Loan (or portions thereof).

SECTION 9    Closing.  The closing for the purchase and sale of the Mortgage Loan shall take place at the office of Sidley Austin LLP, New York, New York, at 10:00 a.m. (New York Time), on the Closing Date or such other place and time as the parties shall agree. The parties hereto agree that time is of the essence with respect to this Agreement.

SECTION 10    Fees and Expenses.  The Seller shall pay all costs and expenses of the Purchaser in connection with the transactions contemplated herein.

SECTION 11    Severability of Provisions.  If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement. Furthermore, the parties shall in good faith endeavor to replace any provision held to be invalid or unenforceable with a valid and enforceable provision which most closely resembles, and which has the same economic effect as, the provision held to be invalid or unenforceable.

-11-

SECTION 12 <u>Governing Law</u>.    THIS AGREEMENT AND ANY CLAIM, CONTROVERSY OR DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT, THE RELATIONSHIP OF THE PARTIES TO THIS AGREEMENT, AND/OR THE INTERPRETATION AND ENFORCEMENT OF THE RIGHTS AND DUTIES OF THE PARTIES TO THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS AND DECISIONS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CHOICE OF LAW RULES THEREOF.    THE PARTIES HERETO INTEND THAT THE PROVISIONS OF SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW SHALL APPLY TO THIS AGREEMENT.

SECTION 13 <u>Submission to Jurisdiction</u>.    EACH OF THE PARTIES HERETO IRREVOCABLY (I) SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA FOR THE SOUTHERN DISTRICT OF NEW YORK FOR THE PURPOSE OF ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT; (II) WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE DEFENSE OF AN INCONVENIENT FORUM IN ANY ACTION OR PROCEEDING IN ANY SUCH COURT; (III) AGREES THAT A FINAL JUDGMENT IN ANY ACTION OR PROCEEDING IN ANY SUCH COURT SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW AND (IV) CONSENTS TO SERVICE OF PROCESS UPON IT BY MAILING A COPY THEREOF BY CERTIFIED MAIL ADDRESSED TO IT AS PROVIDED FOR NOTICES HEREUNDER.

SECTION 14 <u>No Third-Party Beneficiaries</u>.    The parties do not intend the benefits of this Agreement to inure to any third party except as expressly set forth in <u>Section 15</u>.

SECTION 15 <u>Assignment</u>.    The Seller hereby acknowledges that the Purchaser has, concurrently with the execution hereof, executed and delivered the Trust and Servicing Agreement and that, in connection therewith, it has assigned its rights hereunder to the Trustee for the benefit of the Certificateholders. This Agreement shall bind and inure to the benefit of and be enforceable by the Seller, the Purchaser and their respective successors and assigns. The warranties and representations and the agreements made by the Seller herein shall survive delivery of the Mortgage Loan to the Trustee until the termination of the Trust and Servicing Agreement.

SECTION 16 <u>Notices</u>.    All demands, notices and communications hereunder shall be in writing and shall be deemed to have been given upon receipt as follows: to (i) in the case of the Purchaser, J.P. Morgan Chase Commercial Mortgage Securities Corp., 383 Madison Avenue, 8th Floor, New York, New York 10179, Attention: Kunal K. Singh, email: US_CMBS_Notice@jpmorgan.com, with a copy to J.P. Morgan Chase Commercial Mortgage Securities Corp., 4 New York Plaza, 21st Floor, New York, New York 10004, Attention: Bianca A. Russo, Esq., email: US_CMBS_Notice@jpmorgan.com; (ii) in the case of JPMCB, JPMorgan Chase Bank, National Association, 383 Madison Avenue, 8th Floor, New York, New York 10179, Attention: Kunal K. Singh, email: US_CMBS_Notice@jpmorgan.com, with a copy to JPMorgan Chase Bank, National Association, 4 New York Plaza, 21st Floor, New York, NY 10004, Attention: Bianca A. Russo, Esq., email: US_CMBS_Notice@jpmorgan.com; and (iii) in

-12-

the case of any of the preceding parties, such other address as may hereafter be furnished to the other party in writing by such parties.

SECTION 17  Amendment.  This Agreement may be amended only by a written instrument that specifically refers to this Agreement and is executed by the Purchaser and the Seller.  This Agreement shall not be deemed to be amended orally or by virtue of any continuing custom or practice.  No amendment to the Trust and Servicing Agreement which relates to defined terms contained therein or any obligations of the Seller whatsoever shall be effective against the Seller unless the Seller shall have agreed to such amendment in writing.  Promptly after the execution of any amendment to this Agreement, the Purchaser shall furnish written notification of the substance of such amendment to the Trustee and after delivery to the Certificate Administrator and posting to the 17g-5 Information Provider's Website, to the Rating Agency (as defined in the Trust and Servicing Agreement).

SECTION 18  Counterparts.  This Agreement may be executed in any number of counterparts, and by the parties hereto in separate counterparts, each of which when executed and delivered shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page of this Agreement in Portable Document Format (PDF) or by facsimile transmission shall be as effective as delivery of a manually executed original counterpart of this Agreement.

SECTION 19  Exercise of Rights.  No failure or delay on the part of any party to exercise any right, power or privilege under this Agreement and no course of dealing between the Seller and the Purchaser shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under this Agreement preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which any party would otherwise have pursuant to law or equity.  No notice to or demand on any party in any case shall entitle such party to any other or further notice or demand in similar or other circumstances, or constitute a waiver of the right of other party to any other or further action in any circumstances without notice or demand.

SECTION 20  No Partnership.  Nothing herein contained shall be deemed or construed to create a partnership or joint venture between the parties hereto.  Nothing herein contained shall be deemed or construed as creating an agency relationship between the Purchaser and the Seller and no such party shall take any action which could reasonably lead a third party to assume that it has the authority to bind the other party or make commitments on such party's behalf.

SECTION 21  Non-Recourse.  The rights and obligations of the Seller under this Agreement shall be non-recourse as to the officers, directors, shareholders, representatives and employees, as applicable, of the Seller and its respective affiliates.

SECTION 22  Miscellaneous.  This Agreement supersedes all prior agreements and understandings relating to the subject matter hereof.  Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated orally, but only by an instrument in

writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

[SIGNATURE PAGE FOLLOWS]

ACTIVE 232710712v.5

IN WITNESS WHEREOF, the Purchaser and the Seller have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

J.P. MORGAN CHASE COMMERCIAL
MORTGAGE SECURITIES CORP.

By: _____

Name:  John Miller
Title:  Vice President

*JPMCC 2018-PHH – Mortgage Loan Purchase Agreement*

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION

By: _____

    Name:  John Miller
    Title:    Vice President

**EXHIBIT A**

**REPRESENTATIONS AND WARRANTIES REGARDING THE MORTGAGE LOAN**

       1.     The Seller is the sole owner of the Transferred Loan Assets and will transfer the Transferred Loan Assets to the Purchaser free and clear of any liens, pledges, charges, security interests or encumbrances of any nature.

       2.     Except as set forth in the Mortgage File, the Mortgage Loan Documents delivered by the Seller hereunder, have not been modified since the origination of the Mortgage Loan and the Property has not been released from the lien of the Mortgage.

       3.     The Mortgage Loan constitutes a whole loan and not a participation interest or certificate.

       4.     To the best of the Seller's Knowledge (as defined below) after due inquiry, (A) there is no monetary or material non-monetary Event of Default (as defined in the Loan Agreement) existing under any of the Mortgage Loan Documents, (B) there is no event which, with the passage of time or with notice and the expiration of any applicable grace or cure period, would constitute a material Event of Default under any of the Mortgage Loan Documents and (C) the Seller has not waived any Event of Default.  "Seller's Knowledge" means the actual knowledge of any of the individuals at the applicable Seller who were actively involved in the origination, administration or servicing of the Mortgage Loan.

       5.     The Mortgage Loan is a "qualified mortgage" within the meaning of Section 860G(a)(3) of the Code (but without regard to the rule in Treasury Regulations Section 1.860G-2(f)(2) that treats certain defective mortgage loans as qualified mortgages), which means that the gross proceeds of the Mortgage Loan at origination did not exceed the non-contingent principal amount of the Mortgage Loan and either: (a) the Mortgage Loan is secured by an interest in real property (including land and buildings, but excluding personal property and going concern value, if any) having a fair market value (i) at the date the Mortgage Loan was originated at least equal to 80% of the original principal balance of the Mortgage Loan or (ii) at the Closing Date at least equal to 80% of the original principal balance of the Mortgage Loan on such date; or (b) substantially all the proceeds of the Mortgage Loan were used to acquire, improve or protect the real property which served as the only security for the Mortgage Loan (other than a recourse feature or other third party credit enhancement within the meaning of Treasury Regulations Section 1.860G-2(a)(1)(ii)).  If the Mortgage Loan was "significantly modified" prior to the Closing Date so as to result in a taxable exchange under Section 1001 of the Code, it either (x) was modified as a result of the default or reasonably foreseeable default of the Mortgage Loan or (y) satisfies the provisions of either sub-clause (a)(i) above (substituting the date of the last such modification for the date the Mortgage Loan was originated) or sub-clause (a)(ii). Any prepayment premium and spread maintenance charges applicable to the Mortgage Loan constitute "customary prepayment penalties" within the meaning of Treasury Regulations Section 1.860G-1(b)(2).

ACTIVE 232710712v.5

6.      In connection with a release of less than all of the Property, such portion of the Property may not be released as collateral for the Mortgage Loan if the loan-to-value ratio exceeds 125% immediately after the release (taking into account only land and buildings, and excluding personal property and going concern value, if any) unless the Borrower pays down the principal balance of the Mortgage Loan by an amount not less than the greater of (x) the applicable release amount, if any, or (y) the least of one of the following amounts: (i) if such released portion of the Property is sold, the net proceeds of an arm's length sale of the released portion of the Property to an unrelated person, (ii) the fair market value of the released portion of the Property (taking into account only land and buildings, and excluding personal property and going concern value, if any) at the time of the release or (iii) an amount such that the loan-to-value ratio (as so determined) after the release is not greater than the loan-to-value ratio (as so determined) of the Property immediately prior to the release, unless the Lender receives an opinion that if clause (y) is not followed, no Trust REMIC will fail to maintain its status as a REMIC as a result of the release of the applicable portion of the Property.

7.      In the event of a taking of any portion of the Property by any governmental authority (including any court, board, agency, commission, office or other authority of any nature whatsoever for any governmental unit (foreign, federal, state, county, district, municipal, city or otherwise)), whether by legal proceeding or by agreement, and immediately after giving effect to the release of any portion of the lien of the Mortgage in connection with such taking (but taking into account any proposed restoration on the remaining portion of the Property), the loan-to-value ratio is greater than 125% (taking into account only land and buildings, and excluding personal property and going concern value, if any), the Borrower must pay down the principal balance of the Mortgage Loan by an amount not less than the least of one of the following amounts: (i) the condemnation award (less reasonable costs and expenses in collecting such award), (ii) the fair market value of the released portion of the Property (taking into account only land and buildings, and excluding personal property and going concern value, if any) at the time of the release or (iii) an amount such that the loan-to-value ratio (as so determined) after the release is not greater than the loan-to-value ratio (as so determined) of the remaining portion of the Property immediately prior to the release, unless the Seller receives an opinion that if such amount is not paid, no Trust REMIC will fail to maintain its status as a REMIC as a result of the release of the applicable portion of the Property.

A-2

**EXHIBIT** B

**FORM OF BILL OF SALE**

1. <u>Parties</u>.  The parties to this Bill of Sale are the following:

|            |                                          |
|------------|------------------------------------------|
| Seller:    | JPMorgan Chase Bank, National Association |
| Purchaser: | J.P. Morgan Chase Commercial Mortgage Securities Corp. |

2. <u>Sale</u>.  For value received, the Seller hereby conveys to Purchaser, without recourse, all of Seller's right, title and interest, whether now owned or hereafter acquired, in and to the Transferred Loan Assets.

3. <u>Purchase Price</u>.  The par amount of the Seller's interest in the Mortgage Loan equal to $333,200,000 (the "<u>Par Amount</u>"), subject to certain adjustments in connection with the sale of the Certificates and certain post-settlement adjustments for expenses incurred by the Initial Purchaser, on behalf of the Depositor (such adjustments, the "<u>Post-Settlement Adjustments</u>"), which Purchase Price will be in the form of) cash in the amount of the Par Amount (subject to the Post-Settlement Adjustments).

4. <u>Definitions</u>.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Mortgage Loan  Purchase and Sale Agreement, dated as of July 27, 2018, between the Seller and the Purchaser, and if not defined therein, in the Trust and Servicing Agreement referred to therein.

ACTIVE 232710712v.5

**IN WITNESS WHEREOF**, each of the parties hereto has caused this Bill of Sale to be duly executed and delivered on the Closing Date (as defined in the Mortgage Loan Purchase and Sale Agreement).

SELLER:                                          **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

By: _____
    Name:
    Title:

PURCHASER:                                  **J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP.**

By: _____
    Name:
    Title:

B-2