**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WELLS FARGO BANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY IN ITS CAPACITY AS TRUSTEE FOR THE BENEFIT OF HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2018-PHH, COMMERCIAL MORTGAGE PASSTHROUGH CERTIFICATES, SERIES 2018-PHH, acting by and through Situs Holdings, LLC, as special servicer under the Trust and Servicing Agreement, dated August 7, 2018,<br><br>      Plaintiff,<br><br> vs.<br><br>JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,<br><br><br>     Defendant. | Civil Action No. 1:24-cv-05665-LJL |

**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, New York 10281
(212) 504-6000

*Counsel for Defendant JPMorgan Chase Bank, National Association.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .......................................................................................................................... 4

    A.  The Palmer House Loan ........................................................................................... 4

    B.  Mortgage Loan and Securitization .......................................................................... 5

    C.  The Borrower Defaults on the Loan and Trustee Sues for Foreclosure. ..................... 6

    D.  The Cook County Litigation. ................................................................................... 7

    E.  The Current Litigation. ........................................................................................... 9

LEGAL STANDARD .................................................................................................................. 10

ARGUMENT .............................................................................................................................. 11

I.    PLAINTIFF'S CLAIMS ARE UNRIPE. ........................................................................... 11

II.   *COLORADO RIVER* ABSTENTION IS APPROPRIATE ............................................... 15

III.  TRUSTEE STATES NO CLAIM FOR BREACH OF CONTRACT. .................................... 15

    A.  There Is No Material Breach of the MLPA. ............................................................ 15

    B.  There Is No Material Document Defect ................................................................... 20

    C.  There Is No Proximate Harm. .................................................................................. 21

CONCLUSION ........................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page(s)**

*Allergan Fin., LLC v. Pfizer Inc.*,
    67 Misc. 3d 1206(A) (N.Y. Sup. Ct. 2020)...................................................................... 14

*Allergan Fin., LLC v. Pfizer, Inc.*,
    188 A.D.3d 402 (1st Dep't 2020) ...................................................................... 13

*Am. Exp. Bank Ltd. v. Banco Espanol de Credito, S.A.*,
    597 F. Supp. 2d 394 (S.D.N.Y. 2009)...................................................................... 13

*AMSAT Cable Ltd. v. Cablevision of Conn.*,
    6 F.3d 867 (2d Cir. 1993)...................................................................... 11

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010)...................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................... 10

*Bugliotti v. Republic of Argentina*,
    2021 WL 1225971 (S.D.N.Y. Mar. 31, 2021) ................................................................ 10

*Chemtex, LLC v. St. Anthony Enters., Inc.*,
    490 F. Supp. 2d 536 (S.D.N.Y. 2007)...................................................................... 18

*Coffran v. Bd. of Trs. of New York City Pension Fund*,
    46 F.3d 3 (2d Cir. 1995)...................................................................... 11

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976)...................................................................... 3

*Davis v. Kosinsky*,
    217 F. Supp. 3d 706 (S.D.N.Y. 2016)...................................................................... 10

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
    631 F.3d 42 (2d Cir. 2011)...................................................................... 21

*Goldberg v. Pace Univ.*,
    88 F.4th 204 (2d Cir. 2023) ...................................................................... 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    922 F. Supp. 2d 445 (S.D.N.Y. 2013)...................................................................... 2, 12

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
    725 F.3d 65 (2d Cir. 2013) ................................................................................ 11

*In re United Telecomms., Inc., Sec. Litig.*,
    1993 WL 100202 (D. Kan. Mar. 4, 1993) ........................................................... 12

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
    589 U.S. 178 (2020) .......................................................................................... 18

*Johnson v. Ironshore Specialty Ins.*,
    2022 WL 912973 (S.D.N.Y. Mar. 28, 2022) ....................................................... 14

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
    386 F.3d 107 (2d Cir. 2004) .............................................................................. 10

*Lefkara Grp., LLC v. First Am. Int'l Bank*,
    150 A.D.3d 450 (1st Dep't 2017) ...................................................................... 22

*Liu Jo S.P.A. v. Jenner*,
    630 F. Supp. 3d 501 (S.D.N.Y. 2022) ............................................................... 19

*Lola Roberts Beauty Salon, Inc. v. Leading Ins. Grp. Ins. Co.*,
    160 A.D.3d 824 (2d Dep't 2018) ...................................................................... 21

*Makarova v. United States*,
    201 F.3d 110, 113 (2d Cir. 2000) ...................................................................... 10

*Mars Assocs., Inc. v. New York City Educ. Const. Fund*,
    126 A.D.2d 178 (1st Dep't 1987) ...................................................................... 14

*McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*,
    638 F. Supp. 3d 333 (S.D.N.Y. 2022) ................................................................. 1

*Nat'l Org. for Marriage, Inc. v. Walsh*,
    714 F.3d 682 (2d Cir. 2013) .............................................................................. 11

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) .......................................................................................... 11

*Nike, Inc. v. Already, LLC*,
    663 F.3d 89 (2d Cir. 2011) ................................................................................ 10

*Pall v. KPMG, LLP*,
    2006 WL 2800064 (D. Conn. Sept. 29, 2006) ................................................... 12

*Perry v. NYSARC, Inc.*,
    424 F. App'x 23, 25 (2d Cir. 2011) ................................................................... 10

*Solow Bldg. Co. v. ATC Assocs., Inc.*,
    388 F. Supp. 2d 136 (E.D.N.Y. 2005) ............................................................... 14

*TNB USA Inc. v. Federal Rsrv. Bank of New York*,
    2020 WL 1445806 (S.D.N.Y. 2020) ............................................................................ 12

*U.S. Bank Nat'l Ass'n as trustee Bank of Am., N.A. v. E. Fordham DE LLC*,
    804 F. App'x 106 (2d Cir. 2020) ............................................................................... 15

*U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors Liquidation Co.*,
    475 B.R. 347 (S.D.N.Y. 2012) ................................................................................... 13

*U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*,
    152 F. Supp. 2d 443 (S.D.N.Y. 2001) ....................................................................... 17

*Wakeman v. Wheeler & Wilson Mfg. Co.*,
    101 N.Y. 205 (1886) .................................................................................................. 22

*Wells Fargo Bank, N.A. v. Thor Urban Operating Fund, L.P.*,
    No. 24-cv-04339-LJL (S.D.N.Y. Sept. 16, 2024) .................................................. 3, 15

*Wonderful Co. LLC v. Nut Cravings Inc.*,
    2022 WL 4585344 (S.D.N.Y. Sept. 29, 2022) ............................................................ 1

## PRELIMINARY STATEMENT

The backdrop to this case began typically enough: borrower Thor Palmer House Hotel & Shops LLC ("Borrower" or "Thor") defaulted on its debt connected to the Palmer House Hilton Hotel ("Palmer House") in 2020, and lender Wells Fargo Bank, N.A, in its capacity as Trustee ("Trustee" or "Plaintiff"),[1] sought to foreclose. By October 2020, the Cook County, Illinois state court presiding over that foreclosure action granted Trustee's motion to put a receiver in control of the Palmer House.

Two years later, however, matters took an unusual turn when an affiliate of Borrower, Thor Palmer House Office, LLC ("Thor Office"), unveiled a peculiar theory that remains the subject of ongoing litigation in Cook County. The upshot of that theory, according to Thor Office, is this: unless Trustee pays Thor Office millions in allegedly overdue licensing fees *and* Trustee agrees to continue paying fees—at a new, far higher rate—Thor Office can, it asserts, stymie Trustee's efforts to finalize a foreclosure sale.

In response, Trustee says that Thor Office's theory is based on "unsupported factual allegations" and "contrary to" both the "explicit terms" of the controlling Reciprocal Easement Agreement (the "REA") and Illinois law. (Trustee's Cook Cnty. Opp'n to Thor Office's MTD at 4, 6.)[2] According to Trustee, if Thor Office's theory were successful, it "would dramatically alter commercial real estate rights" in Illinois. (*Id.*)

---

[1] Wells Fargo is Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH.

[2] We refer to Watkins Ex. E, Plaintiffs' Response to Thor Palmer House Office, LLC's Section 2-615 Motion to Dismiss Plaintiffs' Complaint in *Wells Fargo Bank, N.A. v. Thor Palmer House Off., LLC*, No. 2023-ch-06830 (filed July 11, 2023), of which the Court may take judicial notice. *See, e.g.*, *Wonderful Co. LLC v. Nut Cravings Inc.*, 2022 WL 4585344, at *3 (S.D.N.Y. Sept. 29, 2022); *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, 638 F. Supp. 3d 333, 338 (S.D.N.Y. 2022).

This Court need not wade into the merits of those arguments.  Trustee instead asks the Court to resolve another question:  whether, depending on the outcome in Cook County, Trustee may unload the theoretical consequences of an adverse Cook County ruling on JPMorgan Chase Bank, National Association ("JPMorgan").  According to Trustee, *if* it prevails in Cook County, it seeks **no relief here**.  **If**, on the other hand, it loses in Cook County and for that reason cannot foreclose, Trustee asks the Court to declare that JPMorgan, the original lender, must bear the loss— and, in fact, must repurchase the $333 million Palmer House loan (the "Loan").

 For four reasons, however, Trustee has no claim against JPMorgan.  *First*, Trustee's claims present no ripe case or controversy.  In fact, whether Trustee seeks any relief here depends on what may or may not happen years from now in another case—its Prayer for Relief seeks relief **only if** there is a "determination in the Cook County Litigation consistent with the arguments advanced by Borrower and its affiliates, and/or that Thor Office has prevailed on its counterclaim . . . ." (Compl. ¶¶ 88, 101.)  Yet claims like Trustee's that "hinge entirely on the outcome of another pending action" present no justiciable case or controversy.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 474 (S.D.N.Y. 2013).

There is also another layer of uncertainty:  even if the Illinois courts ultimately rule "consistent with" Thor Office's arguments, it would remain unclear precisely what that means for the Palmer House or how that would affect Trustee.  Even Trustee admits that, if it loses in Cook County, "the [Palmer House] Hotel *may* lose its access to and use of the Annex space and would incur additional damages as a result" and there could be resulting "uncertainty as to the Trustee's ability to operate the Hotel, and the value of the Hotel in any sale following foreclosure."  (Compl. ¶¶ 86, 100 (emphasis added).)  This "uncertainty" compounds Plaintiff's ripeness problem.  *See infra* Section I.

*Second*, JPMorgan agrees with Thor Urban Operating Fund, L.P. ("Thor Urban")[3] that, if Article III allowed the Court to reach the issue, Trustee's claims would properly be dismissed or stayed under *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976). The ongoing litigation in Cook County and this case involve the same property and underlying agreements, and Trustee asserts claims here that depend on the interpretation of those agreements by the state court.  *See infra* Section II.

*Third*, on the merits, Trustee states no claim against JPMorgan.  Not only has Trustee alleged no injury but, contrary to Trustee's assertions, JPMorgan has breached no representation that it made when it sold the Loan in August 2018.  While Trustee attempts to obscure the point, JPMorgan's representations in the Mortgage Loan Purchase Agreement (the "MLPA") are confined to the "actual knowledge" on August 7, 2018 of certain "actively involved" JPMorgan "individuals."  Yet nowhere in the Complaint does Trustee allege that *any* particular JPMorgan employee had *any* particular knowledge on August 7, 2018—much less actual knowledge of an "event of default" or a "material defect" in the documents.  What's more, the outcome of the Cook County litigation (in 2024 or beyond) has no bearing on the accuracy of any representation about "actual knowledge" in 2018.  *See infra* Sections III.A, III.B.

*Fourth*, Plaintiff also fails to show that any representation by JPMorgan could *proximately* harm Trustee.  Any speculative losses Trustee may face would hinge on a series of intervening events unrelated to JPMorgan.  And without proximate cause, Trustee states no claim.  *See infra* Section III.C.

---

[3] As the Court requested, JPMorgan has reviewed Thor Urban's motion to dismiss in *Wells Fargo Bank, N.A. v. Thor Urban Operating Fund, L.P.*, No. 24-cv-04339-LJL (S.D.N.Y.), and broadly agrees that both cases should be dismissed on ripeness grounds or under *Colorado River*.  Because, however, Trustee's claims against JPMorgan differ in material ways from the single contract claim for breach of a different (but related) agreement asserted against Thor Urban, JPMorgan writes separately on ripeness and Trustee's failure to state a claim.

## BACKGROUND

A.  <u>The Palmer House Loan.</u>

The Palmer House is a historic Chicago hotel that was acquired by Borrower in August 2005. (Compl. ¶¶ 24-25.)  An adjoining, unencumbered parcel contains an Annex (in a building attached to the Palmer House) housing equipment that provides air conditioning, telephone, and internet to the Palmer House. (*Id.* ¶ 25.)  In December 2006, Borrower split the property into three parcels and, without consideration,[4] conveyed its interest in the parcel comprising the Annex to one affiliate, Thor Office, and a parcel comprising retail space to another affiliate, Thor Palmer House Hotel Retail LLC ("Thor Retail").  (*Id.* ¶ 27.)  Following separation of the parcels, the new units—the hotel, Annex, and retail shops—continued operating just as before the separation.  (*See* Watkins Ex. A, Ver. Compl. ¶ 13, *Wells Fargo Bank, N.A. v. Thor Palmer House Off., LLC*, No. 2023-ch-06830 (filed July 11, 2023) ("Cook Cnty. Ver. Compl.").)

Also in December 2006, the three Thor affiliates executed the REA that, "among other things, grants the hotel owner use and access rights in perpetuity to space in the Annex necessary and materially critical to the Palmer House's operations, and grants the Annex owner use and access rights in perpetuity to space in the [Palmer House] Hotel and retail shops." (Compl. ¶ 8.) The REA is a 203-page agreement that was recorded after execution.  (*Id.* ¶ 29.)

Around the same time, Thor Office and Thor Hotel[5] entered the (unrecorded) December 11, 2009, Temporary License Agreement ("License Agreement") addressing the use of certain spaces in the Annex for a monthly fee from one commonly controlled Thor affiliate (Thor Hotel)

---

[4] The Real Property Transfer Tax Declaration attached to the vesting deeds granted to Thor Office and Thor Retail states that "no consideration" was given for Borrower's transfers because each was a "transfer to a related entity."  (Cook Cnty. Ver. Compl. ¶ 26.)

[5] Thor Hotel is an affiliate of the Borrower that served as the operating lessee of the Hotel and is a co-mortgagor of the Hotel under the Loan Agreement. (Compl. ¶ 21.)

to another (Thor Office).  (Cook Cnty. Ver. Compl. ¶ 15; Compl. ¶ 31.)  The License Agreement was renewed or amended by the affiliates at least three times.  (Compl. ¶ 9.)  The term of the final amendment to the License Agreement expired on August 9, 2018, after the Loan was originated (and two days after the Loan was sold under the MLPA).  (*Id*. ¶ 31.)  Although the Thor entities did not execute another written amendment to renew the License Agreement, Thor Hotel continued to make monthly payments to Thor Office under the License Agreement until April 2020. (Cook Cnty. Ver. Compl. ¶ 16.)  That month, a Thor executive sent an email advising that Thor Hotel's license payments were waived until further notice.  (*Id.* ¶ 86, Watkins Ex. B, April 7, 2020 email attached to Cook Cnty. Ver. Compl. as Ex. R.)  Thor Hotel continued its uninterrupted use of the Annex spaces for almost two decades from the time of the 2006 subdivision of the plot through 2023.

B.  Mortgage Loan and Securitization.

In June 2018, JPMorgan originated a $333 million Loan to Borrower, a loan secured only by the Thor Hotel parcel.  (Compl. ¶ 35; *id.* Ex. 1 (Loan Agreement).)  In the Loan Agreement, Borrower Thor made a series of representations and warranties to JPMorgan, including that the Palmer House is able to operate in the way it was operating. (Compl. ¶ 38.)  Trustee alleges that Thor Hotel's representations to JPMorgan inherently include the representation that the Palmer House has unencumbered and perpetual use of the Annex. (*Id.*)

JPMorgan securitized and sold the Loan, in its entirety, on August 8, 2018, through the MLPA, such that JPMorgan is no longer the Lender.  Wells Fargo Bank, N.A., as Trustee, is the successor Lender for the benefit of the holders of the securities issued in the securitization, and Situs Holdings, LLC ("Situs") serves as the special servicer for the Lender.  (Compl. ¶ 16.)  Trustee acts, including in this case, by and through Situs.  (*Id.* Ex. 3.)

The parties to the MLPA agreed that JPMorgan's sale of the loan was "as-is," with limited representations and warranties:

> SECTION 6 **"AS-IS" SALE. THE SELLER [JPMorgan] MAKES NO REPRESENTATIONS OR WARRANTIES OTHER THAN THOSE SET FORTH IN SECTION 7 OR EXHIBIT A. THE SALE OF THE TRANSFERRED LOAN ASSETS TO THE PURCHASER SHALL BE "AS IS" AND MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY (EXCEPT AS SPECIFICALLY SET FORTH IN OR REFERRED TO IN SECTIONS 7 AND 8 OR EXHIBIT A).**

(Compl. Ex. 2 § 6). Section 7(c) of the MLPA provides that "[t]he Seller [JPMorgan], with respect to itself only, further makes the following representations and warranties as to the Mortgage Loans set forth in Exhibit A as of the Closing Date." (Compl. Ex. 2 § 7(c)). Section 8 concerns the "Remedies Upon Breach of Representations and Warranties made by the Seller," and includes the representation referenced in Trustee's Material Document Defect claim.[6] JPMorgan represents in Exhibit A that there was no Event of Default at the time of execution (August 7, 2018) "to the best of the Seller's Knowledge," which is defined to "mean[] the *actual knowledge of any of the individuals* at the applicable Seller who were *actively involved* in the origination, administration or servicing of the Mortgage Loan." (Compl. Ex. 2 at A-1 (emphasis added).)

C.  The Borrower Defaults on the Loan and Trustee Sues for Foreclosure.

In April 2020, shortly after the COVID-19 pandemic hit the United States, Borrower defaulted on the Loan by failing to pay debt service when due. (Compl. ¶ 4.) Two months later, the Borrower further defaulted by failing to pay the Loan at maturity. (*Id.* ¶ 5.) Trustee filed a

---

[6] A "Material Document Defect" is defined in the MLPA as follows: "[a] document required to be delivered to the Purchaser or its designee pursuant to Section 3 is not delivered as and when required, is not properly executed or is defective (any of the foregoing, a "Defect"), or if there is a breach of any representation or warranty made by a Seller relating to the Mortgage Loan as set forth in Exhibit A hereto, and in either case such Defect or breach materially and adversely affects the value of the Mortgage Loan or the interest of the Purchase (or the holders of the Certificates) therein or if such Defect or breach relates to the Mortgage Loans being other than a Qualified Mortgage." MLPA § 8(a).

foreclosure action in state court sitting in Cook County, Illinois.  On Trustee's motion, in October 2020, the court appointed a receiver to oversee the mortgaged property (including Palmer House Hilton Hotel operations) during the pendency of litigation concerning foreclosure, and the receiver remains in place today. (*Id.* ¶ 44.)

It was not until May 2022—two years after Borrower's initial default and nearly four years after JPMorgan sold the Loan—that Thor Office first argued that the receiver operating the Palmer House and, by extension, Trustee, could be barred from accessing the Annex if it did not make supposedly overdue licensing payments, based on a theory that the License Agreement's access rights are superior to those in the REA.  (Cook Cnty. Ver. Compl. ¶ 17, 97; Trustee's Cook Cnty. Opp'n to Thor Office's MTD at 3.)  That month, in connection with briefing on summary judgment in the Foreclosure Action, Thor Office asserted a claim in the amount of $864,574.10 for purported past-due amounts owed under the License Agreement.  (Compl. ¶ 46.)  In June 2022, Thor Office issued a notice to the receiver that it would no longer honor the License Agreement, demanded millions of dollars—including back payment of fees (that had been waived until further notice) under the License Agreement and a substantial raise in access fees going forward—and threatened to evict the receiver from the Annex if the receiver did not agree to pay.  (Compl. ¶ 47; Cook Cnty. Ver. Compl. ¶ 98.)  To Trustee's knowledge, Thor Hotel had never made such assertions or payment demands before June 2022.  (Cook Cnty. Ver. Compl. ¶ 100.)

D. The Cook County Litigation.[7]

In response to Thor Office's new legal theory, Trustee initiated a second action in Cook County over the hotel's access to the Annex (Compl. ¶ 48), which has been consolidated with the

---

[7] The "Cook County Litigation," as that term is used in the Complaint refers to the pending consolidated action captioned *Wells Fargo Bank, N.A., as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH, and Chad Crandell, solely in his capacity as court-appointed receiver in Case No.*

foreclosure action.  (Compl. ¶ 52.)  In the consolidated litigation, Trustee seeks a declaratory judgment rejecting Thor Office's newfound position that the operator of the hotel—first, its affiliate, Thor Hotel, then the receiver as successor—has no right to access the Annex (Compl. ¶ 48; Cook Cnty. Ver. Compl. ¶¶ 112-29).  In particular, Trustee seeks a declaration  that "(a) the [] License Agreement confers no greater rights than the REA (or, in the alternative, that Borrower has an implied easement granting such rights); (b) the [] License Agreement expired by its terms in August 2018; (c) Thor Office has no right to payment under the [] License Agreement; and (d) Thor Office's 10-Day Notice [demanding payment and threatening eviction] is null and void" (Trustee's Cook Cnty. Opp'n to Thor Office's MTD at 3).

Thor Office asserts Illinois-law counterclaims seeking eviction and ejectment of the receiver from the Annex under the License Agreement.  (Watkins Ex. C, Defendant/Counter-Plaintiff Thor Palmer House Office, LLC's Counterclaim, *Wells Fargo Bank, N.A. v. Thor Palmer House Off., LLC*, No. 2023-ch-06830.)  Thor Office has also moved to dismiss the Verified Complaint, and Borrower and other of its affiliates have asserted defenses alleging that the Temporary License Agreement expired and Trustee therefore has no use or access rights to the Annex.  (Compl. ¶ 11.)

Trustee argues that the Thor affiliates' interpretation of the License Agreement and REA is **"contrary to Illinois law,"** based on **"unsupported factual allegations,"** is **"contrary to [the REA's] explicit terms,"** and "**would dramatically alter commercial real estate rights in this state**."  (Trustee's Cook Cnty. Opp'n to Thor Office's MTD at 4, 6 (emphasis added).)  Trustee's

---

*2020CH05460 v. Thor Palmer House Office, LLC, a Delaware limited liability company; Thor Palmer House Hotel & Shops LLC, a Delaware limited liability company; and Thor Palmer House Hotel LLC, a Delaware limited liability company*, Civil Action No. 2023 CH 06380 (Circuit Court of Cook County, Illinois, Chancery Division).

case here depends on the Cook County court rejecting its arguments there—otherwise, it seeks no relief in this case.

Defendants' motions to dismiss Trustee's complaint are fully briefed and awaiting hearing. Thor Office's Motion to Strike Trustee's defenses to Thor Office's counterclaim appears to be awaiting a briefing schedule. (Watkins Ex. F, Defendant Thor Office's Motion to Set Hearing and Briefing Schedule, *Wells Fargo Bank, N.A. v. Thor Palmer House Off., LLC*, No. 2023-ch-06830.) Nothing suggests that the parties have commenced discovery.

     E.  <u>The Current Litigation.</u>

With the Cook County litigation still in its early stages, Trustee, acting through Situs, turned its attention to JPMorgan. In January 2024, Situs wrote JPMorgan (the "Repurchase Notice") asserting that, if the Thor entities prevail in Cook County, JPMorgan will have therefore materially breached its representations and warranties and be responsible for a Material Document Defect under the MLPA. (Compl. Ex. 9.) Situs asserted that its losing in Cook County would require JPMorgan to repurchase the $333 million Loan. (*Id.*) JPMorgan's response outlined factual and legal issues with Situs's theory of liability and rejected its repurchase demand. (*Id.* Ex. 10.)

Trustee sued in late July, bringing two counts for breach of the MLPA. (ECF No. 1.) In its prayer for relief, Plaintiff seeks no action from the Court now—and none ever if it prevails in Cook County—instead requesting relief only "following any determination in the Cook County litigation consistent with the argument advanced by Borrower and its affiliates and/or that Thor Office has prevailed on its counterclaim." (Compl. ¶¶ 88, 101.) In other words, Trustee asks the Court to put this action on hold (perhaps for years) while the Cook County litigation unfolds.

**LEGAL STANDARD**

When, as here, a defendant moves under both Rule 12(b)(1) and Rule 12(b)(6), the threshold and "first issue" to resolve "is whether the Court has the subject matter jurisdiction necessary to consider the merits of the action." *Davis v. Kosinsky*, 217 F. Supp. 3d 706, 707 (S.D.N.Y. 2016). "A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. The Court may refer to materials outside the pleadings but may not rely on hearsay or conclusory statements in doing so. *Bugliotti v. Republic of Argentina*, 2021 WL 1225971, at *3 (S.D.N.Y. Mar. 31, 2021). While courts must generally accept well-pleaded facts as true when considering motions under Rule 12(b)(1), courts "are not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

To state a claim under Rule 12(b)(6), Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts do not accept as true legal conclusions, *see id.*, "threadbare recitals of the elements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or assertions "contradicted by the complaint itself," *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations "must be enough to raise a right to relief above the speculative level." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

**ARGUMENT**

## I.  PLAINTIFF'S CLAIMS ARE UNRIPE.

A claim is not "justiciable" unless it is "ripe—it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687–88 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)).  In Article III courts, the "ripeness doctrine" precludes jurisdiction when a plaintiff seeks judicial intervention beyond "Article III['s] limitations on judicial power.  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  Article III thus "prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013).

Yet that is precisely what Trustee asks of the Court here.  As Trustee acknowledges throughout the Complaint, it only purports to have a claim if—and only if—a final judgment adverse to Trustee is eventually entered in the Cook County litigation, and that judgment is based on the alleged nonpayment of licensing fees.  Because its claims are "based upon contingent future events that may not occur as anticipated, or indeed may not occur at all," *Coffran v. Bd. of Trs. of New York City Pension Fund*, 46 F.3d 3, 4 (2d Cir. 1995), Trustee's claims are unripe.

The Court need look no further than the plain language of the Complaint to confirm that Trustee's claims hinge on a "contingent future event." *Id.* at 4.  In at least thirteen paragraphs,[8] Trustee frames the asserted breach of contract in speculative and conditional terms.  Trustee alleges, for instance, that "***if, in the Cook County Litigation***, the court interprets various agreements related to the Loan and governing the operation of the Hotel consistent with the

---

[8] (*See* Compl. ¶¶ 6, 11, 13, 14, 34, 58, 61, 70, 71, 73, 84, 86, 97.)

arguments advanced by Borrower and its affiliates, *then* there were breaches of the representations and warranties in the MLPA." (Compl. ¶ 6 (emphasis added).)  And Trustee admits that it "brings this action to *preserve* and prosecute claims against [JPMorgan] for breaches of representations and warranties in the MLPA *in the event Trustee's defenses in the Cook County Litigation are unsuccessful*."  (*Id.* ¶ 14) (emphasis added).

Hypothetical pleading of the sort states no ripe claim under Article III.[9]  *See Mendez v. Banks*, 65 F.4th 56, 61 (2d Cir. 2023) (prospective legal obligations cannot be assumed "[b]ecause we cannot now ascertain the future"); *Goldberg v. Pace Univ.*, 88 F.4th 204, 213 (2d Cir. 2023) (explaining that breach theories predicated on hypothetical future events are unripe); *see also TNB USA Inc. v. Federal Rsrv. Bank of New York*, 2020 WL 1445806, at *10 (S.D.N.Y. 2020) (dismissing complaint as unripe where application for master account had yet to be decided).[10] For that reason, courts routinely dismiss claims like Trustee's that "hinge entirely on the outcome of another pending action."  *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 474-75 (S.D.N.Y. 2013) (dismissing claims under Rule 12(b)(1)) *aff'd sub nom. In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148 (2d Cir. 2015); *Pall v. KPMG, LLP*, 2006 WL 2800064, at *2-3 (D. Conn. Sept. 29, 2006) (dismissing claim as unripe

---

[9] Indeed, the only claims Trustee tries to assert here are admittedly premised on the possibility of a future, unfavorable resolution in the Cook County litigation.  And even in the event of such a resolution, Trustee's Complaint: (i) fails to explain how an adverse ruling in Illinois would somehow demonstrate misrepresentations by JPMorgan in 2018; and (ii) admits that any resulting damages would still be hypothetical and speculative.  (Compl. ¶¶ 86, 100 (alleging that Palmer House "may lose its access" to Annex and there could be "uncertainty as to Trustee's ability to operate the Hotel").)

[10] *See also In re United Telecomms., Inc., Sec. Litig.*, 1993 WL 100202, at *3 (D. Kan. Mar. 4, 1993) ("This conclusion is suggested even by the language of the complaint, which states that the director defendants should be held liable '*to the extent that* United Telecommunications is held liable for the damages alleged by the purchasers of its securities.' Additionally, the complaint asserts that the defendants, by their acts of mismanagement and misconduct, have exposed the company to '*potential* damages' in connection with the class action. Where, as here, the claim of damages is contingent on the outcome of a separate, pending lawsuit, the claim is not ripe and the complaint must be dismissed.") (citations omitted) (emphasis in original).

and observing that "[w]hen a claimed injury is contingent upon the outcome of a separate, pending lawsuit, courts generally dismiss claims as premature").

Nor can Article III jurisdiction be manufactured by framing the case, as Trustee does here, as one for declaratory relief:  "if [that] were [the case], the Declaratory Judgment Act could be invoked to answer any and every hypothetical question. Our constitutional system gives courts no such power." *U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors Liquidation Co.,* 475 B.R. 347, 359 (S.D.N.Y. 2012).  Instead, where complaints seek a declaratory judgment in the event the plaintiff is ruled liable in another proceeding, "the proper course" is "[d]ismissal pending further developments."  *Am. Exp. Bank Ltd. v. Banco Espanol de Credito*, *S.A.*, 597 F. Supp. 2d 394, 406 (S.D.N.Y. 2009).  While an adverse judgment in another proceeding might leave plaintiff "in a difficult position," "until [the other] court[] act[s], this Court cannot, consistent with the Constitution's limits on federal jurisdiction, issue a binding declaration of the future rights of" the parties.  *Id.*

Equally unripe is Trustee's indemnification theory is also unripe, which is dependent on multiple contingencies.  It too hinges on the outcome of the Cook County case on top of any final determination here of its "Material Breach" and "Material Document Defect" theories.  (Compl. ¶ 76 & Ex. 2 § 8(a).)  Trustee did not mention indemnification in its Repurchase Demand; it surfaced for the first time in the Complaint. JPMorgan understands that a state court opinion about "conditional judgments" on indemnity claims, *Allergan Fin., LLC v. Pfizer, Inc.*, 188 A.D.3d 402 (1st Dep't 2020) *aff'd as modified*, 188 A.D.3d 402 (2020), may have prompted Trustee to invoke an allegedly "related" indemnification right.  But neither *Allergan* nor any other New York ruling supports jurisdiction under Article III of the U.S. Constitution.  The jurisdiction of New York courts is not circumscribed by federal law—constitutional or otherwise.  In fact, the decision below

that was affirmed by the *Allergan* court concedes that the outcome would likely have been different under federal law, explaining that "[n]or do New York state courts follow the Second Circuit's approach to ripeness for declaratory judgment claims." *Allergan Fin., LLC v. Pfizer Inc*., 67 Misc. 3d 1206(A), at *6 (N.Y. Sup. Ct. 2020). In fact, because "[f]ederal courts generally decline to award declaratory relief in indemnification actions," *Solow Bldg. Co. v. ATC Assocs., Inc.,* 388 F. Supp. 2d 136, 139 (E.D.N.Y. 2005), when the underlying issue of liability has yet to be determined in another action, "the lack of ripeness is palpable." *Johnson v. Ironshore Specialty Ins.,* 2022 WL 912973, at *8-9 (S.D.N.Y. Mar. 28, 2022).

What's more, the result in *Allergan* is an outlier even under New York law. While in certain, narrow factual circumstances not present here, New York courts permit a "conditional judgment" on otherwise unripe indemnification claims, such judgments can typically be sought only when the alleged indemnitor is impleaded to the alleged indemnitee's case against the allegedly primarily responsible party. *See Mars Assocs., Inc. v. New York City Educ. Const. Fund*, 126 A.D.2d 178, 192 (1st Dep't 1987) (dismissing claim seeking such a "conditional judgment" for failure to implead). In *Allergan*, the court created a limited exception when "plaintiff attempt[s] to implead defendants in the underlying lawsuits but [i]s prevented from doing so by a contractual forum selection clause." *Id.* at 404 (citing the application of the generally applicable rule in *Mars*). Even if Trustee had sued JPMorgan in New York court, *Allergan* would be inapt: Trustee has made no attempt to implead JPMorgan in the Cook County litigation.[11]

---

[11] *Allergan* also relied on contractual language that demonstrated an intent to fund such costs before ultimate liability was determined (*id.* at 403); the MLPA has no such provision.

## II. *COLORADO RIVER* ABSTENTION IS APPROPRIATE.

JPMorgan agrees with Thor Urban that *Colorado River* supplies another basis for dismissal.[12]  This suit against JPMorgan, like the one against Thor Urban, is parallel to the Cook County litigation, and the six *Colorado River* factors favor abstention because Trustee seeks relief only in the event of an adverse final judgment in the Cook County litigation.  *See, e.g.*, *U.S. Bank Nat'l Ass'n as trustee Bank of Am., N.A. v. E. Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020) (affirming dismissal under *Colorado River* where "the district court determined that the two proceedings were parallel, given that both actions are centered on the same parties' Loan Modification Agreement and whether either party breached its obligations under that agreement" and the proceeding would have led to litigation on the "same issues, proffering the same evidence, at the state and federal levels").

## III. TRUSTEE STATES NO CLAIM FOR BREACH OF CONTRACT.

Trustee states no claim that JPMorgan breached any contract, no matter the result in Cook County.  First, the Complaint does not allege that any JPMorgan employee had any actual knowledge of an event of default.  Second, an adverse ruling in 2024 or beyond cannot create a "defect" in loan documentation for a transaction closed in 2018 when no such gap existed at that time.  Third, under no event can Trustee point to a representation by JPMorgan that proximately caused its (speculative) future harm.

### A. There Is No Material Breach of the MLPA.

Trustee's claim that an adverse outcome in Cook County would make JPMorgan's representations and warranties in the MLPA "materially inaccurate" concedes their accuracy and

---

[12] Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF No. 16) at 9-17, *Wells Fargo Bank, N.A. v. Thor Urban Operating Fund, L.P.*, No. 24-cv-04339-LJL (S.D.N.Y.) (Sept. 16, 2024).

seeks no relief.  Trustee's theory makes little sense.  JPMorgan did not guarantee any future court ruling; it made representations about certain individuals' actual knowledge in 2018.

The parties to the MLPA agreed that JPMorgan's sale of the Loan Agreement was "as-is," with JPMorgan's representations and warranties confined to those made in Sections 7 and 8 and Exhibit A.  (Compl. Ex. 2 § 6.)  Section 7(c) of the MLPA provides that "[t]he Seller [JPMorgan], with respect to itself only, further makes the following representations and warranties as to the Mortgage Loans set forth in <u>Exhibit A</u> as of the Closing Date."  (Compl. Ex. 2 § 7(c)).  And in Exhibit A of the MLPA, JPMorgan represents and warrants that:

> To the best of the ***Seller's Knowledge*** (as defined below) after due inquiry, (A) there is no monetary or material non-monetary Event of Default (as defined in the Loan Agreement) existing under any of the Mortgage Loan Documents, (B) there is no event which, with the passage of time or with notice and the expiration of any applicable grace or cure period, would constitute a material Event of Default under any of the Mortgage Loan Documents and (C) the Seller has not waived any Event of Default. ***"Seller's Knowledge"*** *means the actual knowledge of any of the individuals* at the applicable Seller who were actively involved in the origination, administration or servicing of the Mortgage Loan.

(Compl. Ex. 2 at A-1 (emphasis added).)  JPMorgan's representations and warranties are thus limited to the ***actual knowledge*** of JPMorgan employees on ***August 7, 2018*** who were actively involved in the Loan at the time it was made.

Trustee states no claim that JPMorgan's representations are false.  Indeed, Plaintiff concedes that there was no breach as of the closing of the Loan Agreement on August 7, 2018; at most, the Complaint alleges that after the closing, the License Agreement expired, and years later a legal argument was raised that the REA did not give Palmer House perpetual access rights to the Annex.  The Complaint does not contain a single allegation about the alleged knowledge of any JPMorgan employee, much less actual knowledge of any issue regarding access to the Annex or the interpretation or enforceability of the REA—nor is there any allegation that any individual at

JPMorgan would somehow have known that Thor Office would take the position that it now does in the Cook County litigation.  Instead, all Trustee's allegations about alleged knowledge are about "JPMorgan" generally.

Trustee's few allegations about alleged knowledge are also speculative.  Trustee guesses, for instance, that because JPMorgan was aware of the License Agreement, it may have "discussed and considered" the License Agreement during negotiation of the Loan Agreement. (Compl. ¶¶ 40, 57.)  Trustee also speculates,"*[o]n information and belief*, *in the event* the interpretation of Temporary License Agreement and REA as alleged in the Cook County litigation *is adjudicated to be correct*, each of these breaches of the representations and warranties was known to JPMorgan at the time the MLPA became effective in August 2018."  (Compl. ¶ 73 (emphasis added).)[13]  But because that "information and belief" is not "accompanied by statements of facts upon which such belief is reasonably founded,"  *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.,* 152 F. Supp. 2d 443, 455 (S.D.N.Y. 2001), Trustee's unsupported "belief," cannot be credited.

Nor could Trustee allege facts on which such a belief could be *reasonably* founded.  No Court ruling in 2024 or beyond could be at all probative of JPMorgan employees' actual knowledge in 2018.  And based on Trustee's allegations, neither JPMorgan nor anyone else had any hint of trouble until Thor Office debuted its novel theory in *2022*—a theory that, according to Trustee, is baseless (Trustee's Cook Cnty. Opp'n to Thor Office's MTD at 4, 6.; *see also* Compl. ¶ 54; Cook Cnty. Ver. Compl. ¶ 97 ("On May 16, 2022, during briefing on Lender's motion for summary judgment, Thor Office's counsel, *for the first time*, informed Lender's counsel that Thor Office has a claim in the amount of $864,574.10 for purported past-due amounts under the

---

[13] This supposition is made in connection with Trustee's allegations regarding a Material Document Defect; in any event, it provides no basis to sustain a breach claim.

Temporary License Agreement.") (emphasis added).)  In short, no matter what occurs in the Cook County litigation, Trustee pleads no facts to support the contention that JPMorgan's employees had actual knowledge of any material breach of the Loan Agreement.

In any case, none of Trustee's speculative (and conditional) assertions allege the "actual knowledge" necessary for JPMorgan's representation to have been false.  Alleged "effective awareness" (Compl. ¶ 61), known red flags, and suggestions, with the benefit of hindsight,[14] that perhaps JPMorgan should have foreseen what was to come, falls short of "actual knowledge."  *See, e.g.*, *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 186 (2020) ("But if a [party] is not aware of a fact, he does not have 'actual knowledge' of that fact however close at hand the fact might be."); *Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) ("New York courts have routinely held that when a defendant is under no independent duty, even alleged ignorance of obvious warning signs . . . will not suffice to adequately allege 'actual knowledge.'").  Because Trustee does not plead the "actual knowledge" by "actively involved" employees that the MLPA demands, Trustee states no claim for breach of JPMorgan's representation.

Seemingly aware that it has no case stemming from JPMorgan's narrow representations, Trustee also tries another approach: Trustee asserts that on top of JPMorgan making representations of its own, JPMorgan also, in the MLPA, "incorporated Borrower's representations in the Loan Agreement" (Compl. ¶ 13)—into its own representations—including the representation that the Palmer House is able to operate in the way it was operating in August 2018.

---

[14] Even *now*, with the benefit of hindsight, Trustee asserts that the REA provides an easement in perpetuity allowing the owner of the Hotel to use the Annex as necessary and consistent with historical operations since the parcel split, in accordance with industry practice.  (*See* Compl. ¶¶ 53-54 (explaining Trustee's positions in Cook County).)  Trustee, however, seeks to charge JPMorgan employees in 2018 with the knowledge of a potential court ruling (and final judgment) in 2024 or beyond.

Not so.  Trustee's assertion flouts explicit—and doubly emphasized—terms of the MLPA.  In Section 6, the parties agreed that JPMorgan's sale of the loan was "**AS-IS**," and that "**THE SELLER [JPMorgan] MAKES NO REPRESENTATIONS OR WARRANTIES OTHER THAN THOSE SET FORTH IN <u>SECTION 7</u> OR <u>EXHIBIT A</u>.**"  (Compl. Ex. 2 § 6.)  And neither Section 7 nor Exhibit A makes any reference to "incorporation" of any representation made by anyone else.  To the contrary, JPMorgan's representations are expressly "with respect to itself only." (*Id.* § 7(c).)  The MLPA thus forecloses Trustee's theory.  And as between the Complaint's characterization of the MLPA and the MLPA itself, it is the MLPA that controls.  *See Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 515 (S.D.N.Y. 2022) (explaining, on a motion to dismiss, that "[t]he Court need not accept [plaintiff's] interpretation of the contract as true when that interpretation goes against the contract's plain language, which the Court is bound to impose").

Finally, Trustee asserts that JPMorgan falsely "represented and warranted it had no knowledge that contradicted" Borrower's representations.  (Compl. ¶¶ 62-67.)  But that representation is also about the "actual knowledge" of particular employees as of August 7, 2018 and Trustee pleads no facts showing that a JPMorgan employee could have foreseen, much less actually knew, that (i) Borrower would default; (ii) Borrower and Thor Office would not formally renew the License Agreement; (iii) Thor Office would use the alleged non-renewal of the License Agreement to attempt to deny access to Borrower's successor; and (iv) that gambit would prove to be a successful counterclaim by Thor Office in the Cook County litigation—despite Trustee's assertion that it is baseless, (*see* Trustee's Cook Cnty. Opp'n to Thor Office's MTD at 4, 6.).[15]

---

[15] Even today, no one can "actually know" whether Thor Office's theory will prevail.

B.  <u>There Is No Material Document Defect.</u>

For similar reasons, Trustee states no breach of contract claim based on a Material Document Defect.  Under Section 8(a) of the MLPA, there is a "Material Document Defect" when "any document required to be delivered to the Purchaser or its designee pursuant to <u>Section 3</u> is not delivered as and when require, is not properly executed or is defective" and "such Defect . . . materially and adversely affects the value of the Mortgage Loan." (Compl. Ex. 2 at § 8(a).)  Section 8(a) embeds Section 3 of the MLPA, which provides that certain documents are required to be delivered "on the Closing Date" or "on the "Delivery Date."

Plaintiff alleges such a defect "[i]f Borrower and its affiliates succeed in their arguments in the Cook County Litigation." (Compl. ¶ 97.)  But there was no Material Document Defect when the loan was sold in 2018, and Trustee does not allege even a hint of an Annex issue until 2022.  Even that (assertedly baseless) theory hinges on events after JPMorgan sold the Loan on August 7, 2018:  an alleged failure to renew (and, eventually, to make payments under) the License Agreement.  Trustee's allegations here and in the Cook County litigation make that clear that there simply was no Material Document Defect on August 7, 2018.[16]  The License Agreement was in place at the time the MLPA became effective.  (Compl. ¶ 31.)  As of August 2018, Thor Hotel had continually made license payments to Thor Office, payments that continued until April 2020 (Cook Cnty. Ver. Compl. ¶ 16) when Thor Office waived in writing any additional license payments "until further notice" (*id.* ¶ 86; Watkins Ex. B).  Further, the hotel continued to use the Annex space uninterrupted and without incident for about two more years after that (Compl. ¶ 47).  And on August 7, 2018, as at all relevant times, the REA (which, unlike the License Agreement, was

---

[16] That agreement—which was, after all, between affiliates—had been renewed several times in the preceding years (Compl. ¶ 9; Compl. Ex. 5).

recorded) was in place (Compl. ¶¶ 29-30, 32).  No future ruling in the Cook County litigation can change those facts.  There is thus nothing to support the existence of an "actually known" Material Document Defect on August 7, 2018.

    C.  <u>There Is No Proximate Harm.</u>

Trustee also fails to plead proximate cause, which "is an essential element of damages in a breach of contract action."  *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52-53 (2d Cir. 2011).  "[A]s in tort, a plaintiff must prove that a defendant's breach *directly and proximately caused* his or her damages."  *Id.* at 53 (emphasis in original).  And when, as here, "only one conclusion may be drawn from the established facts," proximate cause may be decided as a matter of law.  *Lola Roberts Beauty Salon, Inc. v. Leading Ins. Grp. Ins. Co.*, 160 A.D.3d 824, 826 (2d Dep't 2018) (holding, as a matter of law, that "plaintiff's claim was not a proximate cause of the plaintiff's loss").

Here, any harm that Trustee might suffer (if it ever suffers harm at all) would be the result of intervening events unrelated to JPMorgan—some of which have yet to occur and may never occur.  Those intervening causes include: (i) the lapse of the License Agreement between Thor Office and a non-Borrower affiliate after the sale of the Loan, despite the License Agreement having been extended three previous times; (ii) the onset of a global pandemic in 2020 which adversely impacted the hospitality industry in an acute manner, triggering the default; (iii) the filing of a foreclosure action in which Thor Office concocted a new position that without renewal and backpay under the License Agreement, the Annex space could not be accessed; and (iv) the as-yet-to-occur scenario where the Cook County court agrees with Thor Office on its interpretation of the agreements, and that decision is upheld on appeal.  None of those events has anything to do with the actions or knowledge of JPMorgan in August 2018, and none could have been foreseen (much less known) by anyone when JPMorgan sold the Loan in 2018.

That string of intervening causes leaves any alleged breach by JPMorgan too attenuated to impose contract damages here. *See, e.g.*, *Lefkara Grp., LLC v. First Am. Int'l Bank*, 150 A.D.3d 450, 451 (1st Dep't 2017) (affirming dismissal of breach of contract claim where purported breach could not have proximately caused plaintiff's damages); *Diesel*, 631 F.3d at 53 (explaining that there is no claim for breach of contract "if the claimed losses are 'the result of other intervening causes'") (quoting *Wakeman v. Wheeler & Wilson Mfg. Co.,* 101 N.Y. 205, 209 (1886)).

## CONCLUSION

For these reasons, JPMorgan's motion to dismiss should be granted.

Dated: New York, New York
      October 8, 2024

CADWALADER, WICKERSHAM & TAFT LLP

By:  /s/ *Jonathan M. Watkins*
Jonathan M. Watkins
Jared Stanisci
Samuel G. Mann
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Fax: (212) 504-6666
jonathan.watkins@cwt.com
jared.stanisci@cwt.com
sam.mann@cwt.com

*Counsel for JPMorgan Chase Bank, National Association.*